## HAMMERSCHMIDT ET AL. *v.* UNITED STATES.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 254. Argued April 29, 30, 1924.—Decided May 26, 1924.

1. Section 37 of the Criminal Code (Rev. Stats., § 5440) punishing conspiracy " to defraud the United States in any manner or for any purpose," does not embrace a conspiracy to defeat the purpose of the Selective Draft Act by inducing persons to refuse to register under it. P. 185.
2. To " defraud " the United States means to cheat the Government out of property or money, or to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest. P. 188.
3. But mere open defiance of the governmental purpose to enforce a law by urging those subject to it to disobey it, is not a " fraud " in this sense. *Id. Haas* v. *Henkel,* 216 U. S. 462, explained; *Horman* v. *United States,* 116 Fed. 350, limited.

287 Fed. 817, reversed.

CERTIORARI to review a judgment of the Circuit Court of Appeals affirming a conviction and sentence in a prosecution for conspiracy to defraud the United States by dissuading persons, by handbills, etc., from registering for military service.

*Mr. Ed. F. Alexander,* with whom *Mr. Joseph W. Sharts* was on the brief, for petitioners.

*Mr. Assistant Attorney General Davis,* with whom *Mr. Solicitor General Beck* and *Mr. Clifford H. Byrnes,* Special Assistant to the Attorney General, were on the brief, for the United States.

The facts charged in the indictment constitute a conspiracy to defraud the United States.

The purpose of the statute is to secure the wholesome administration of the laws and affairs of the United States. *United States* v. *Moore,* 173 Fed. 122; *United States* v. *Stone,* 135 Fed. 392.

It is not limited to conspiracies to deprive the United States of property or money, but is broad enough to cover any conspiracy to defraud the United States of any right, including the obstruction of the lawful functions of any department of the Government. *Haas* v. *Henkel,* 216 U. S. 462; *Hyde* v. *Shine,* 199 U. S. 62; *United States* v. *Foster,* 233 U. S. 515; *United States* v. *Keitel,* 211 U. S. 370; *United States* v. *Sacks,* 257 U. S. 37; *United States* v. *Janowitz,* 257 U. S. 42; *Firth* v. *United States,* 253 Fed. 36; *United States* v. *Galleanni,* 245 Fed. 977. The conspirators may not escape the consequences of their agreement to do an illegal thing because they did not resort to deception or trickery. *Haas* v. *Henkel, supra; United States* v. *Slater,* 278 Fed. 266; *Edwards* v. *United States,* 249 Fed. 686; *Horman* v. *United States,* 116 Fed. 350.

The Selective Service Act, among other things, required that all male citizens between the ages of twenty-one and thirty should register for service in the military and naval forces of the United States.

In the face of this statute petitioners caused to be printed, with the idea of distributing to the public at large, several thousand handbills attacking the Draft Act and counseling or commanding to " refuse to register for conscription." The indictment avers that a number of them were distributed. The conduct of petitioners con-

stituted a conspiracy to defraud the United States in that the intention and necessary effect of their agreement and acts was to obstruct and defeat the purpose of a measure enacted by Congress for the preservation of the Government. Such conduct was not within the criminal provisions of the Selective Service Act (§§ 5 and 6), and at the time of the offense the Espionage Act had not been enacted.

It is argued that petitioners did not conspire to impair the functions of " the department of military registration." The indictment is not so narrow. It charges a conspiracy to impair the function of registration. Such function is a mutual and reciprocal obligation, requiring (1) that persons within the terms of the Draft Law present themselves for registration, and (2) that the government officials examine applicants and make a record of their qualifications for military service. The duties of registration officials are a part of such function only. The term obviously refers to the entire activity of registration and includes whatever is done by the applicants as well as the acts of government employees who examine applicants and make a record of the information so obtained. It is, therefore, fallacious to contend that there was no interference with the function of registration because petitioners did not hinder or obstruct registration officials in the performance of their office.

The real question is whether a conspiracy organized for the express purpose of depriving the Government, through the distribution of circulars and other literature containing gross misstatements of fact, of the services of those upon whom the country must rely in the hour of national peril, does not, if consummated, thereby defraud the United States in the broad sense in which the term defraud is used in § 37 of the Penal Code.

[The form of the indictment, and a defense based on the First Amendment were also discussed.]

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This is a review by certiorari of the conviction of thirteen persons charged in one indictment with the crime of violating § 37 of the Penal Code. The charge was that the petitioners wilfully and unlawfully conspired to defraud the United States by impairing, obstructing and defeating a lawful function of its government, to wit: that of registering for military service all male persons between the ages of twenty-one and thirty as required by the Selective Service Act of May 18, 1917, c. 15, 40 Stat. 76, through the printing, publishing and circulating of handbills, dodgers and other matter intended and designed to counsel, advise and procure persons subject to the Selective Act to refuse to obey it. A demurrer to the indictment was overruled and trial and conviction followed. By exception and assignment of error the question is properly made whether a crime described as above can be said to be a conspiracy to defraud the United States. The Sixth Circuit Court of Appeals affirmed the conviction. 287 Fed. 817.

The indictment was framed and the argument of the Government in support of the conviction is based on the language of this Court in *Haas* v. *Henkel,* 216 U. S. 462, 479, construing § 5440, Rev. Stats. (now § 37 of the Penal Code) which reads as follows:

" If two or more persons conspire . . . to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable," etc.

The opinion was delivered by Mr. Justice Lurton and the words relied on are:

" The statute is broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing

or defeating the lawful function of any department of Government."

This language it is contended necessarily embraces a conspiracy to defeat the selective draft by inducing the persons required to register under it to defeat its purpose by refusing to register.

We think the words relied on can not be given such a wide meaning when we consider the case to which they were applied, and when we replace them in the context. The Court was dealing with an appeal in a *habeas corpus* case to test the validity of an order of removal of the appellant under § 1014, Rev. Stats. The main question was whether the indictments under which the removal was ordered charged an offense against the United States. They charged two sets of conspiracies. One was that the defendant with two others, one an associate statistician in the Department of Agriculture, conspired to obtain secret official information which the statistician in violation of his official duty was to give out to his co-conspirators concerning the cotton crop reports in advance of the time they were to be published according to law; another was that the statistician was to falsify one of the reports of which his associates were to be advised in advance ; another was that the defendant and one associate were to bribe the statistician to make the false report and publish it in advance. The second conspiracy involving the defendant, the statistician, and other persons was similar in detail to the first. All of the information in advance of the official publication was to be used for speculative purposes in the open market. The opinion describes the official machinery in the Agricultural Department for acquiring the information upon which the cotton reports each month were based, and shows that they were approved by the Secretary, and that by regulation the employees were required to keep them and their details secret until duly published, and points out that

they were of great value and vitally affected the market price of the cotton crop.

The appellant in that case urged that the conspiracy to defraud the United States, punished in the section, must result in financial loss to the Government. It was this contention which the Court was meeting, and upon this point it said:

" These counts do not expressly charge that the conspiracy included any direct pecuniary loss to the United States, but as it is averred that the acquiring of the information and its intelligent computation, with deductions, comparisons and explanations involved great expense, it is clear that practices of this kind would deprive these reports of most of their value to the public and degrade the department in general estimation, and that there would be a real financial loss. But it is not essential that such a conspiracy shall contemplate a financial loss or that one shall result ", and then follows the sentence already quoted upon which the Government relies.

It is obvious that the writer of the opinion and the Court were not considering whether deceit or trickery was essential to satisfy the defrauding required under the statute. The facts in the case were such that that question was not presented. The deceit of the public, the trickery in the advance publication secured by bribery of an official, and the falsification of the reports, made the fraud and deceit so clear as the gist of the offenses actually charged that their presence was not in dispute. The sole question was whether the fraud there practised must have inflicted upon the Government pecuniary loss, or whether its purpose and effect to defeat a lawful function of the Government and injure others thereby was enough. That was all that Mr. Justice Lurton's words can be construed to mean. The cases in which this case has been referred to involved unquestioned deceit or false pretense, and it was only cited in them to the point that financial

loss of the Government is not necessary to violate the section. *United States* v. *Foster*, 233 U. S. 515, 526; *United States* v. *Barnow*, 239 U. S. 74, 79. See also *United States* v. *Plyler*, 222 U. S. 15, in respect to § 5418, Rev. Stats.

To conspire to defraud the United States means primarily to cheat the Government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest. It is not necessary that the Government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane or the overreaching of those charged with carrying out the governmental intention. It is true that the words " to defraud " as used in some statutes have been given a wide meaning, wider than their ordinary scope. They usually signify the deprivation of something of value by trick, deceit, chicane or overreaching. They do not extend to theft by violence. They refer rather to wronging one in his property rights by dishonest methods or schemes. One would not class robbery or burglary among frauds. In *Horman* v. *United States*, 116 Fed. 350, § 5480, Rev. Stats., as amended March 2, 1889, c. 393, 25 Stat. 873, making it a crime to devise any scheme or artifice to defraud by use of the mails and opening correspondence with any person, and to mail a letter in execution thereof, was held to be violated by the sending of a letter threatening to blacken the character of another unless that other paid the blackmailer money. It was held that the word " scheme " in that section was of broader meaning and did not necessarily involve trickery or cunning in the scheme, if use of the mails was part of it; that intent to defraud in such a statute was satisfied by the wrongful purpose of injuring one in his property rights. The question had much consideration. The decision, however, went to the verge and should be con-

fined to pecuniary or property injury inflicted by a scheme to use the mails for the purpose. Section 5480 has since been again amended to make its scope clearer. Its construction in the *Horman Case* can not be used as authority to include within the legal definition of a conspiracy to defraud the United States a mere open defiance of the governmental purpose to enforce a law by urging persons subject to it to disobey it.

We think the demurrer to the indictment in this case should have been sustained and the indictment quashed.

*Judgment reversed.*