**In re SCHNABEL.**

No. 17080.

District Court, D. Minnesota, Fourth Division.

July 3, 1945.

G. Halvorson, of Minneapolis, Minn., for bankrupt.

Joseph C. Vesely, of Hopkins, Minn., for objecting creditors.

NORDBYE, District Judge.

This matter came on for hearing on petition of the bankrupt for review of an order of the Referee denying his discharge.

The Referee has succinctly stated the question presented for review as follows: "That the question presented for review is whether, in a no-asset case, discharge can be denied where the Referee is satisfied that the bankrupt has committed an offense punishable by imprisonment, to wit, the offense of having knowingly and fraudulently made a false oath in or in relation to his bankruptcy proceeding, in this: that in his original petition in said proceeding bankrupt declared under oath that Schedule A, annexed to his petition, contained a full and true statement of all his debts, and so far as it is possible to ascertain, the names and places of residences of his creditors, and in his oath to said Schedule A declared that said schedule is a statement of all his debts, when in fact, at the time the bankrupt signed and made oath to his said petition and schedule, and for some time previous thereto, bankrupt had numerous creditors, whose names and addresses he well knew, as well as the amount of his indebtedness to each of them, all of which bankrupt knowingly, deliberately, intentionally, and wilfully omitted from his said petition and schedule, without any justification or excuse therefor."

Referee Heisey, with commendable care and industry, has set forth his views in the findings of fact and conclusions of law and an extended memorandum. There is naught to be gained by amplifying that

which he has so fully and painstakingly stated. Suffice it to say that when a bankrupt deliberately and intentionally makes a false oath in his petition and schedules with reference to his creditors and knowingly, intentionally and wilfully omits from his petition and schedules numerous creditors without any justification or excuse, there should be only one rule which should guide a bankruptcy court in passing upon an objection to his discharge predicated upon such false oath, and that is, that the objections to the discharge must be sustained. This is not a situation where mistake, ignorance, inadvertence or misunderstanding has occasioned the false oath. The Referee has found the falsity in the petition and schedules to be deliberate, intentional and wilful. It cannot be gainsaid, therefore, that the bankrupt wilfully and intentionally committed perjury. That fraud has been perpetrated on the Court on account thereof seems self-evident.

The following are the findings of fact, conclusions of law, and memorandum of the Referee:

"Findings of Fact

"1. On August 8th, 1944, bankrupt signed and made oath to his debtor's petition and to Schedule A annexed thereto which oath was authorized by the Bankruptcy Act and was taken by bankrupt before and administered to bankrupt by a competent officer duly authorized to administer same under the Bankruptcy Act.

"2. On August 14th, 1944, said petition, with said Schedule A annexed thereto, so signed and sworn to by bankrupt, were duly filed in the office of the Clerk of United States District Court for the District of Minnesota, Fourth Division.

"3. On August 14th, 1944, said District Court duly referred above entitled proceeding to the late Horace H. Glenn, then Referee in Bankruptcy.

"4. On August 14th, 1944, Referee Glenn duly entered an order, adjudging petitioner a bankrupt under the Bankruptcy Act.

"5. In bankrupt's original petition in this proceeding, he declared under oath that 'the schedule hereto annexed, marked Schedule A, * * * contains a full and true statement of all his debts, and, so far as it is possible to ascertain, the names and places of residence of his creditors * * *' and in his oath to Schedule A annexed to his original petition, bankrupt

declared that 'said schedule is a statement of all of my debts. * * *.'

"6. At the time bankrupt signed and made oath to his debtor's petition in this proceeding and to Schedule A thereto annexed, and for some time previous thereto, he had the following actual creditors in addition to those shown in Schedule A annexed to his original petition:

"(1) Dr. H. E. Drill, of Hopkins, Minnesota, to whom he owed $117.00

"(2) Kokesh Hardware Company, of Hopkins, Minnesota, to whom he owed $10.00

"(3) Len Milbert, of Hopkins, Minnesota, to whom he owed $70.00

"(4) Eldoro Johnson, of Hopkins, Minnesota, to whom he owed $26.00

"(5) Reuben (R. G.) Guttormson, of Minneapolis, Minnesota, to whom he owed $1,000.00

"(6) Harold Leitzow, to whom he owed $70.00

"(7) Dr. I. H. Picha, of Hopkins, Minnesota, to whom he owed $4.00

"(8) Gately Clothing Company, to whom he owed $19.00, and

"(9) Albin Alberg, to whom he owed $57.00.

"7. At the time this bankrupt signed and made oath to his debtor's petition in this proceeding and to Schedule A thereto annexed he well knew that the persons and firms whose names and places of residence appear in Finding 6 hereof, to which reference hereby is made, were then and for some time previous thereto had been his creditors.

"8. At the time this bankrupt signed and made oath to his debtor's petition in this proceeding and to Schedule A thereto annexed he knowingly, deliberately, intentionally, and wilfully, omitted therefrom the listing and the names and places of residence of nine of his creditors whose names and places of residence appear in Finding 6 hereof, to which reference hereby is made, said omission by him then and there being inexcusable and unjustifiable.

"9. On September 8th, 1944, bankrupt signed and made oath to and thereafter filed a petition to amend Schedule A, annexed to his original petition, to include in said original Schedule A the names and places of residence of eight of his creditors, mentioned in Finding 6 hereof, to which reference hereby is made, originally omitted therefrom as aforesaid.

"10. On September 21st, 1944, Horace H. Glenn, then Referee in Bankruptcy, made an order authorizing the amendment prayed for in bankrupt's petition mentioned in Finding 9 hereof, to which reference hereby is made.

"11. The listing by bankrupt in his original Schedule A annexed to his original petition, of all of his creditors, together with their places of residence, was a material matter in and in relation to this bankruptcy proceeding and bankrupt's omission in that regard, as stated and found in the foregoing Finding, to which reference hereby is made, was a material matter in and in relation to this bankruptcy proceeding.

"12. Bankrupt's declaration under oath in his original petition that the Schedule thereto attached, marked Exhibit A, contains a full and true statement so far as it is possible to ascertain, of the names and places of residence of his creditors related to a material matter in this bankruptcy proceeding and bankrupt's said declaration under oath was wilfully false and contrary to his oath and was known and believed by bankrupt to be untrue at the time he signed and made oath to his original petition and original Schedule A thereto annexed.

"13. Bankrupt in the premises stated in the foregoing Findings, to which reference hereby is made, knowingly, deliberately, and intentionally practiced and perpetrated deceit upon the United States District Court for the District of Minnesota and upon the Referee in Bankruptcy to whom above proceeding was referred.

"14. Bankrupt's acts and conduct, in the premises stated in the foregoing Findings, to which reference hereby is made, dishonestly interfered with and disrupted the due and proper administration of the affairs involved in above bankruptcy proceeding and in the estate of bankrupt, and impaired the lawful functions of the Referee in Bankruptcy to whom above proceeding was referred.

"15. Bankrupt, in the premises stated in the foregoing Findings, to which reference hereby is made, knowingly and wilfully suppressed and concealed material information and facts which the United States District Court and the Referee in Bankruptcy were legally entitled to know and which the bankrupt was required by law to furnish said Court and Referee.

"16. Bankrupt, in the premises stated in the foregoing Findings, to which reference hereby is made, deliberately, wilfully, and knowingly deprived his creditors, whose names and places of residence he omitted from his original Schedule A, of the right to notice of and participation in above proceeding and bankruptcy estate.

"Conclusions of Law

"1. On August 8th, 1944, bankrupt committed an offense punishable by imprisonment as provided under the Bankruptcy Act in that he knowingly and fraudulently made a false oath in and in relation to this proceeding under the Bankruptcy Act in this, to wit, that on the date aforesaid the bankrupt subscribed to a declaration under oath in his original debtor's petition in this proceeding that the schedule annexed to said petition, marked Schedule A, contained, so far as it was possible to ascertain, the names and places of residence of his creditors, whereas, in truth and in fact, bankrupt deliberately, intentionally, wilfully and contrary to his oath omitted from such schedule certain material matter, to wit, the names and places of residence of at least nine of his creditors which then and there were and for some time previous thereto had been well known to him and to each of whom he then and there was and for some time previous thereto had been indebted in amounts ranging from $4.00 to $1,000.00, as he then and there well knew.

"2. Bankrupt, having demonstrated his dishonesty as aforesaid, should be granted no favor.

"3. Bankrupt, by virtue of the premises aforesaid, is not entitled to be discharged in this bankruptcy proceeding from his obligations.

"Dated April 10, 1945.

"Geo. A. Heisey
"Referee in Bankruptcy.

"Memorandum

"Fraud Element. It is contended seriously by bankrupt that there is no basis in the evidence in this case for a finding that bankrupt 'fraudulently' made a false oath in or in relation to this bankruptcy proceeding and that inasmuch as there are no assets in this estate no fraud upon creditors could possibly result from the bankrupt's conduct.

"Section 14, sub. c, of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c, provides:

'The court shall grant the discharge unless satisfied that the bankrupt has (1) committed an offense punishable by imprisonment as provided under this Act; * * *', while Section 29, sub. b, of the Bankruptcy Act, 11 U.S.C. § 52, sub. b, provides: 'A person shall be punished by imprisonment * * * upon conviction of the offense of having knowingly and fraudulently * * * (2) made a false oath or account in or in relation to any proceeding under this Act; * * *.'

■ "I am perfectly satisfied in my own mind that Congress, in enacting the above provisions, intended that the court or referee should not grant a discharge to a bankrupt when satisfied that the bankrupt has committed perjury and that resultant fraud upon his creditors is wholly immaterial, for the reason that perjury in itself imports a dishonest or corrupt motive and involves moral turpitude.

■ "Furthermore, it is reasonable to say that Congress intended that there must be a full, complete and honest disclosure by a bankrupt to the court or referee of all his assets, liabilities and business transactions, and that when a bankrupt knowingly, deliberately and intentionally fails to make such disclosure, he is not entitled to be discharged of his obligations.

"It would seem insensate to claim that a bankrupt can render himself liable to prosecution under Section 125 of the United States Criminal Code, 18 U.S.C.A. § 231, defining the crime of perjury, and that on identical proof a bankrupt cannot be prosecuted for the crime of perjury under the Bankruptcy Act, simply for the reason that Section 125, C.C. does not embrace the word 'fraudulently' whereas Section 29 of the Bankruptcy Act employs it. And it would be equally absurd to say that a bankrupt cannot commit perjury in an asset case without suffering the consequences but can commit perjury in a no-asset case with impunity.

"In Hammer v. United States, 271 U.S. 620, 46 S.Ct. 603, 70 L.Ed. 1118, the defendant was adjudged a bankrupt and the proceeding was referred to a referee. Subsequently the bankrupt was made a defendant in a criminal prosecution, the charge being that the bankrupt suborned perjury by inducing one Trinz to take an oath before the referee and there falsely to testify that prior to the filing of the petition he, Trinz, had loaned the bankrupt $500 and that the bankrupt had given his note therefor. The bankrupt contended that the taking of a false oath in bankruptcy is not perjury and that, without perjury, there could not be subornation of perjury. The Supreme Court pointed out (1) that Section 125, C.C. provided: 'That whoever, having taken an oath before a competent officer, in any case in which a law of the United States authorizes an oath to be administered, that he will testify truthfully, shall state any material matter which he does not believe to be true, is guilty of perjury, and shall be fined not more than $2,000 and imprisoned for not more than five years,' and (2) that Section 29, sub. b of the Bankruptcy Act provides that a person shall be punished by imprisonment not to exceed two years upon conviction of the offense of having knowingly made a false oath in any proceeding in bankruptcy; and the Supreme Court said:

" 'It is plain that the offense charged includes perjury as defined by section 125. That section is in general terms and is broad enough to apply to persons sworn in bankruptcy proceedings. The facts alleged include all the elements of that offense, as well as the making of a false oath in bankruptcy, and they show a violation of both sections. The indictment does not specify the section under which it is drawn, but the omission is immaterial.'

"In Epstein v. United States, 7 Cir., 196 F. 354, it was held false swearing in bankruptcy proceedings constituted 'perjury' within Sections 125 and 126 of the United States Criminal Code, 18 U.S.C.A. §§ 231, 232, and it was further held that Section 29 of the Bankruptcy Act of 1898 merely changed the punishment for perjury committed in bankruptcy proceedings.

"In Wechsler v. United States, 2 Cir., 158 F. 579, the court held that the provision made in Section 29, sub. b (2) of the Bankruptcy Act, providing for the punishment of anyone who wilfully and fraudulently makes a false oath in or in relation to any proceeding in bankruptcy does not create a new offense, but merely prescribes a different penalty for the crime of perjury when committed in bankruptcy proceedings.

"The following recent authority is on all fours with the case at bar and the court's attention hereby is directed specially to it:

"In re Steinberg, 2 Cir., 143 F.2d 942, 943, it was held:

"1. That the finding of a bankruptcy referee that the bankrupt knowingly made a false oath was binding upon the Appellate Court;

"2. That an intentional untruth by a bankrupt in a matter material to the issue which is itself material is sufficient to prevent discharge, without proof of any fraudulent purpose;

"3. That evidence that bankrupt knowingly omitted certain creditors from the schedule of debts annexed to his petition in bankruptcy required denial of discharge, without proof as to any fraudulent purpose.

"In this case objection to bankrupt's discharge was that he had knowingly and fraudulently made an oath in his petition in bankruptcy that the schedules annexed thereto contained a full and true statement of all his debts and the names of all his creditors, whereas, in truth and in fact, the bankrupt knowingly and wilfully omitted from the schedules the names and addresses of, and the debts owing to, five creditors. Three of those creditors were brothers-in-law of the bankrupt who had made loans to him. A fourth creditor was an insurance agent who had advanced premiums to bankrupt on his promise to repay them. A fifth creditor was the State Tax Commission with a judgment for unpaid taxes.

"At the hearing, the bankrupt testified that his brothers-in-law had released their claims before bankruptcy; that he had told his lawyer, who prepared the schedules, of the insurance agent's claim but that the lawyer had inadvertently omitted it; that a title search had failed to reveal the judgment of the Tax Commission and he had known of no claim by the Commission against him for taxes; that he had relied upon his lawyer and had signed the schedules without reading them.

"The referee found that the bankrupt did not inadvertently omit the claims of his brothers-in-law but deliberately excluded them from the schedules 'for the purpose of preferring them over other creditors'; that there was no evidence other than the bankrupt's testimony to warrant the conclusion that those debts had been cancelled; that the referee did not believe the bankrupt's testimony that they were cancelled; that the omission of the claim of the insurance agent was inexcusable and could not be regarded as inadvertent because the bankrupt signed the schedules without reading them; that the failure to list as a creditor the State Tax Commission was an act of unjustifiable carelessness since the bankrupt knew or should have known of the existence of that claim; and that the bankrupt's amendment of the schedules, after the filing of the specifications, was irrelevant. Accordingly, the referee entered an order denying the discharge.

"The court said: 'The referee's finding that the bankrupt "knowingly" made a false oath binds us, for the referee saw and heard the bankrupt testify and we cannot, therefore, go behind his conclusions as to credibility. The only question is whether the oath was "fraudulently made." We would be inclined to say no, if this were a case of first impression; as the bankrupt had no assets, the omission of the claims of his relatives could not have been designed to prefer them, and it is difficult to perceive any fraudulent purpose, either in those omissions or the failure to include the claim for taxes. Perhaps the omission of the insurance agent's claim shows a fraudulent purpose. But we need not consider that question. For we bow to the precedents which, in practical effect, have read the word "fraudulently" out of the statute by the use of the phrase, "an intentional untruth in a matter material to the issue which is itself material." (Citations). Under those authorities it is enough that the false oath here was knowingly made.'

"In the Slocum case reported in 2 Cir., 22 F.2d 282, 285, the false oath relied upon by the objecting creditor consisted of testimony given by the bankrupt upon his examination before the referee at the first meeting of his creditors. The court held that the materiality of a false oath does not depend upon whether, in fact, the falsehood was detrimental to the creditors.

"Among other things, the court said:

" 'While the statute does not withhold a discharge from a bankrupt who has testified falsely through error, its benefits are intended only for honest debtors. Those who purposely answer untruthfully concerning material matters propounded upon their examination deserve no favor. * * *

" 'The words of the statute requiring that the testimony be given "knowingly and fraudulently" mean no more than "an intentional untruth in a matter material to the issue which is itself material." (Cita-

tions). The matter of intent is proved by inference.'

" 'Fraudulently' does not mean necessarily 'with intent to defraud creditors.' If it was intended thus to restrict its meaning, Congress would have used apt language to accomplish that result. It would seem, therefore, that the term 'fraudulently' should be given a broad significance, if it was intended that it should have any at all.

"Section 7, sub. a(8) of the Bankruptcy Act, 11 U.S.C.A. § 25, sub. a(8), provides that the bankrupt 'shall * * * prepare, make oath to, and file in court * * * with his petition, if a voluntary bankrupt, a schedule of his property, showing the amount and kind of property, the location thereof and its money value, in detail; and a list of all his creditors * * * showing their residences, if known, or if unknown that fact to be stated, the amount due to or claimed by each of them * * *.' Thus Congress imposed upon the bankrupt the duty, not only of scheduling his assets in detail, but also of scheduling his liabilities in detail, and the latter duty would seem to be as imperative as the former duty.

■ "It is the law that fraud may consist of intentional suppression or concealment of the truth as to material facts. United States ex rel. Percas v. Karnuth, D. C.N.Y., 28 F.Supp. 597.

"Even in a case which purports to have no assets therein according to the petition and schedules, the bankrupt's creditors have the right to participate in the proceeding nevertheless. Where a bankrupt knowingly fails to schedule his liabilities, the creditors thus omitted are deprived of that right. There is always the possibility at least that some asset or assets belonging to the bankrupt may be discovered somehow. In a case where there are unscheduled liabilities, even though it is determined ultimately that there are no assets, the failure of the bankrupt to show all his creditors results in disorder and confusion in the proceeding when the fact is discovered. An amendment to the petition, additional notices to the unscheduled creditors, and a further examination of the bankrupt normally would be required. One can readily see where if the proceeding had progressed substantially, the discovery of the bankrupt's dereliction might disrupt entirely the orderly administration of his affairs in bankruptcy.

■ "It has been held repeatedly that while 'fraud upon the United States' means primarily to cheat the government out of property or money, nevertheless it also means to dishonestly obstruct, interfere with or impair any lawful function of the government. Haas v. Henkel, 216 U.S. 462, 30 S.Ct. 249, 54 L.Ed. 569, 17 Ann.Cas. 1112; Hammerschmidt v. United States, 265 U.S. 182, 44 S.Ct. 511, 68 L.Ed. 968. It does not seem too extravagant to say that where a bankrupt knowingly and intentionally violates his statutory duty and thus interferes with and disturbs the due and orderly administration of the bankruptcy law and of his estate in bankruptcy, he thus perpetrates a fraud upon the bankruptcy court or upon the referee in bankruptcy.

"In United States v. De Francis, 60 App. D.C. 207, 50 F.2d 497, involving a naturalization proceeding, the petitioner concealed the fact of previous conviction for sale of liquor and the court held that it constituted 'a fraud upon the court.'

"In Aronofsky v. Bostian, 8 Cir., 133 F. 2d 290, 292, the bankrupt concealed the fact of a prior bankruptcy proceeding and in its opinion the Appellate Court referred to 'a fraud upon the court.' This case is dealt with more extensively hereinafter.

"However, in the Goldman case, reported in 2 Cir., 37 F.2d 97, 98, where the bankrupt, as the heir of his father, failed to disclose honestly and wholly his knowledge of the extent of his father's estate, the court pointed out that 'the materiality of the false testimony was not dependent upon the extent, or even the fact, of its being harmful to the creditors,' and in Re Marshall, 2 Cir., 47 F.2d 209, 210, the court said 'that a motive for such false swearing is not altogether plain is of no moment whatever. It is enough that the bankrupt intentionally testified falsely on a material matter on a material issue.' Our own Eighth Circuit Court of Appeals in Aronofsky v. Bostian, supra, discussed hereinafter, held that in order to justify denial of a discharge, it is not necessary that the bankrupt who swears falsely in a material matter shall understand at the time all of the consequences, advantageous or detrimental, that may flow from the act of false swearing.

"There is one case in our own Eighth Judicial Circuit which, at first blush, might give the impression that the fraud element is essential. This case, however, reconciles itself when read with the paramount

consideration in mind that the court there dealt with the proposition that there was no perjury involved for the reason that the testimony, alleged to have been knowingly false, did not relate to a material matter. If the alleged false testimony had related to a material issue, there would seem to be no doubt that our Court of Appeals would have affirmed the District Court and the referee on the theory that the bankrupt had committed actual perjury, which, in itself, is sufficient upon which to predicate a denial of discharge. The case is that of Willoughby v. Jamison, 8 Cir., 103 F.2d 821, 823, certiorari denied, 308 U.S. 588, 60 S.Ct. 111, 84 L.Ed. 492, where the referee recommended that the petition for discharge be denied and the District Court confirmed his action, the Appellate Court reversing the District Court. The objection to discharge was that the bankrupt upon general examination before the referee at the first meeting of his creditors gave false testimony under oath in respect to the source from which his wife obtained funds with which she purchased a certain farm. It appeared that the bankrupt, in so testifying, endeavored merely to protect a confidence reposed in him by his wife and that the bankrupt had no pecuniary interest whatever in the farm. The exception to the referee's report was based on the contention that the false statement was not material for the reason that it did not relate to the bankruptcy estate. The Appellate Court, in substance, held that this exception was well taken. The court said:

" 'The general rule is that when an application for discharge is made by a bankrupt in the district court, the judge of that court is, by the terms of the statute, bound to grant it, unless upon investigation it appears that the bankrupt has committed one of the six offenses specified in the bankruptcy act. * * *

" 'It is true that in a proper case the materiality of the false oath is not dependent upon injury to creditors. * * *

" 'Further, the evidence does not sustain the charge that the falsehood with reference to the source from which his wife obtained her money was "fraudulently" made. The burden was upon the objecting creditor to prove not only that the false testimony was knowingly made, but that it constituted an offense "punishable by imprisonment." * * * There must be proof of actual fraud. In re Morrow, D.C., 97

F. 574. The falsehood must be intended to mislead the creditors as to some fact material for creditors to know. Otherwise it is not fraudulent within the meaning of the statute. * * * But the burden was upon the objecting creditor to produce evidence from which a corrupt motive or intent could be inferred. The offense charged was one involving moral turpitude. * * * The record as a whole tends to show that the bankrupt's motive was to protect his wife's confidence * * *. Aside from the knowingly false character of the testimony the evidence does not reveal a single element of fraud * * *.'

"In a later case, however, our Circuit Court of Appeals makes itself clearer, although it does refer to a 'fraud upon the court and upon appellant's creditors', the real tenor of the opinion being to the effect, however, that it suffices that the bankrupt knows what is true, and, so knowing, wilfully and intentionally swears to what is false. I refer to the case of Aronofsky v. Bostian, 8 Cir., 133 F.2d 290, (mentioned hereinbefore) wherein the court held:

"1. That a false oath made by a bankrupt in relation to proceedings in bankruptcy, sufficient to justify denial of discharge, must be 'knowingly and fraudulently' made, that is, it must contain all elements involved in perjury at common law, namely, an intentional untruth in a matter material to an issue which is itself material;

"2. That in order to justify denial of a discharge, it is not necessary that a bankrupt who swears falsely in a material matter to an issue before a court shall understand at the time all of the consequences, advantageous or detrimental, that may flow from the act of false swearing, but it suffices that a bankrupt knows what is true and, so knowing, wilfully and intentionally swears to what is false.

"3. That a bankrupt falsely swore in his statement of affairs, accompanying his petition in bankruptcy, that no proceeding under the Bankruptcy Act had been brought by or against him during six years immediately preceding the filing of the petition, so as to require denial of discharge, was not 'clearly erroneous' so as to justify reversal.

"In this case the referee in bankruptcy denied the discharge in bankruptcy. The District Court sustained the order of denial

and the Appellate Court affirmed, saying (page 292 of 133 F.2d):

"'* * * Appellant's false statement was adapted to, and if it had not been discovered and refuted would have worked a fraud upon the court and upon appellant's creditors in Boston, and he presents no fact or circumstance which tends to excuse or explain the falsity or to reconcile his act in making the statement with an honest intent so that the inference drawn by the trier of the facts that it was fraudulently done can not be deemed unjustified. It is not necessary that one who swears falsely in a matter material to an issue before a court shall understand and appreciate at the time all of the consequences, advantageous or detrimental, that may flow from the act of false swearing. It suffices that he knows what is true and so knowing wilfully and intentionally swears to what is false.'

"Sufficiency of Specification of Objections. Bankrupt's attorney admitted due service of a copy of the Specification of Objections on December 7, 1944. On December 30, 1944, notice of hearing on the objections was given, the date of such hearing being fixed as of February 1, 1945, on which date the hearing opened. At no time prior to the hearing did the bankrupt interpose any written motion to dismiss the objections or any demurrer thereto on the ground of their legal insufficiency.

■ "As a matter of fact the only objection made to the Second Objection (with which we are here concerned) was made orally by bankrupt's attorney, apparently as an afterthought, during the course of the hearing, when he moved to strike out the Second Objection on the ground that the objector failed to allege that the bankrupt 'fraudulently' omitted the creditors' names, alleging only that he wilfully and intentionally omitted them.

"The objection sustained in this case, as made by the objecting creditor, is that 'the bankrupt has committed an offense punishable by imprisonment as provided under the Bankruptcy Act in that he knowingly and fraudulently made a false oath or act in or in relation to his proceeding under the Bankrupt Act in that in his petition to be adjudicated a bankrupt and the schedules thereunto attached said bankrupt did intentionally and wilfully omit from the list of his creditors the following:' (Here follows a specification of the names and addresses of nine certain creditors).

"Accordingly it will be observed that objector adopts the language of Section 29, sub. b(1), 11 U.S.C.A. § 52, sub. b(1), employing the words 'knowingly and fraudulently' in connection with the alleged false oath and then proceeds to plead details to inform the bankrupt of the charge he has to meet.

"The bankrupt made no claim that the informative matter pleaded was insufficient to apprise him of the charge with which he was confronted. As a matter of fact, as stated before, the only contention ever made by the bankrupt before the referee as to the alleged insufficiency of the objection specified is, in substance, that the word 'fraudulently' should have been repeated in connection with the pleading of informative matter. I do not believe that the objector, after employing the identical language of the statute, was required in the merely informative allegations to again employ the word 'fraudulently'. In my opinion the words 'intentionally and wilfully' used in pleading the bankrupt's omission of creditors is sufficient.

"In Wolstein v. United States, 8 Cir., 80 F.2d 779, the court held that 'wilfully' as in an indictment for removing and concealing non-tax paid distilled spirits means intentionally and also connotes knowledge. As has been illustrated in the early part of this memorandum, it suffices that the bankrupt knowingly committed perjury. See particularly Aronofsky v. Bostian, discussed in the first part of this memorandum.

"However, the specification in consideration here is similar to that which was attacked in Remmers v. Bank, 8 Cir., 173 F. 484, 486, where it was held that a specification of objection to the discharge of a bankrupt on the ground that he had made a false oath to his schedules is sufficient where it alleged that such schedules contained no mention of certain stocks or of any interest therein or claim against any third person on account of same. The court said:

"'It has been held to be error, in specifying objections in opposition to a bankrupt's application for discharge, to merely follow the language of the act. The rule is the facts relied on to prevent a discharge must be pleaded with sufficient certainty of detail as to apprise the bankrupt of the charge he has to meet and to enable the

court to understand the issue to be examined and determined by it.'

"And the court further said: 'Again, as has been seen from the statement made, the bankrupt did not except to the form of this objection for the purpose of testing its sufficiency in law, but joined issue thereon and proceeded to trial, treating the objection made as sufficient in the trial court.'

"Measure of Proof. Bankrupt contends that in a discharge denial case the same high degree of proof is required as in a criminal prosecution.

"The Act itself, Section 14, sub. c, 11 U.S.C. § 32, sub. c, implies that if the referee is 'satisfied' that the bankrupt has committed an offense punishable by imprisonment, he shall not grant a discharge.

"In Remmers v. Bank, 8 Cir., 173 F. 484, it was held that to justify denial of a bankrupt's discharge on the ground that he made a false oath to his schedules, the evidence must be of sufficiently clear and convincing character to overcome the presumption of his honesty; but that it is not required to be of the high degree necessary to sustain a conviction for perjury.

"In this connection see the proviso at the end of Section 14, sub. c(7) of the Bankruptcy Act 'that if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision c, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt.'

"Recantation. The petition in this case was filed August 14, 1944, having been signed and verified by the bankrupt on August 8, 1944. After the first meeting of creditors on September 8, 1944, where the bankrupt's dereliction of duty was discovered, the bankrupt on September 21, 1944, filed an amendment to his petition and schedules setting forth the names and addresses of eight certain creditors, as well as the amounts owed them respectively, which he had omitted from his original petition and schedules.

"The filing of the amendment in this case does not expunge the original offense.

"In United States v. Norris, 300 U.S. 564, 57 S.Ct. 535, 81 L.Ed. 808, the court held that a witness who commits perjury cannot purge himself of the offense by subsequently recanting and that the crime of perjury is complete when a false statement has once been made.

"In United States v. Margolis, 3 Cir., 138 F.2d 1002, the court held that if the bankrupt's original answer at a hearing before a referee in a bankruptcy proceeding was knowingly false, the crime of making a false oath in a bankruptcy proceeding was complete and it could not be expunged by a subsequent recanting."

The Court adopts the findings of fact, conclusions of law and memorandum of the Referee above recited, and his order denying the discharge of the above named bankrupt is hereby affirmed. It is so ordered.

An exception is allowed to the bankrupt.