**UNITED STATES v. BRYAN**
and three other cases.

Nos. 365–368.

District Court of the United States
for the District of Columbia.

May 21, 1947.

See, also, 7 F.R.D. 38.

Charles A. Horsky, of Washington, D. C., for defendant Richard Morford, for the motion.

Abraham J. Isserman, of Washington, D. C., for defendant George Marshall, for the motion.

O. John Rogge, of New York City, for defendant Helen R. Bryan, and defendants Edward K. Barsky and others, for the motion.

George Morris Fay, U. S. Atty., and Charles B. Murray, Asst. U. S. Atty., both of Washington, D. C., opposed.

**60**

HOLTZOFF, Associate Justice.

In January 1945 the House of Representatives of the United States, by House Resolution No. 5, 79th Congress, 1st Session, created a Committee known as the Committee on Un-American Activities, which was authorized to make investigations of "(1) the extent, character, and objects of un-American propaganda activities in the United States, (2) the diffusion within the United States of subversive and un-American propaganda that is instigated from foreign countries or of a domestic origin and attacks the principle of the form of government as guaranteed by our Constitution, and (3) all other questions in relation thereto that would aid Congress in any necessary remedial legislation."

The defendants Richard Morford, George Marshall and Helen Bryan, have been indicted under U.S.C.A. Title 2, § 192,[1] for failure to comply with subpoenas duces tecum issued by the Committee and directing them to produce certain records before the Committee.

The indictment against Richard Morford alleges that he was subpoenaed to produce "all books, records, papers and documents showing all the receipts and disbursements of money by the National Council of American-Soviet Friendship, Inc., and all cordespondence, memoranda and communications with any and all persons, together with a complete list of all affiliated organizations, for the year 1945."

The indictment against the defendant George Marshall alleges that he was subpoenaed to produce "all books, records, documents and correspondence pertaining to the National Federation for Constitutional Liberties relating to the solicitation and disbursement of funds with a list of contributors." This indictment also charges the defendant Marshall with refusal to answer questions as to whether he had con-

nection with an organization known as the Marshall Foundation.

The indictment against the defendant Helen R. Bryan alleges that she was subpoenaed to produce "all books, ledgers, records and papers relating to the receipt and disbursement of money by or on account of the Joint Anti-Fascist Refugee Committee or any subsidiary or subcommittee thereof, together with all correspondence and memoranda of communications by any means whatsoever with persons in foreign countries for the period from January 1, 1945, to March 29, 1946."

The indictment against the defendants Edward K. Barsky and others consists of two counts. The first count avers that they were members of the Executive Board of the Joint Anti-Fascist Refugee Committee, and charges them with a conspiracy to defraud the United States by encouraging the defendant Helen R. Bryan to refuse to produce records before the Committee; and further with a conspiracy to violate U.S.C.A. Title 2, § 192.

The second count of this indictment charges the defendants with the substantive offense of failure to comply with a subpoena directing them to produce "all books, ledgers, records and papers relating to the receipt and disbursement of money by or on account of the Joint Anti-Fascist Refugee Committee or any subsidiary or any subcommittee thereof, together with all correspondence and memoranda of communications by any means whatsoever with persons in foreign countries for the period from January 1, 1945, to March 29, 1946."

The defendants now move to dismiss the indictments for alleged failure to state an offense against the United States.

The principal contention advanced by the defendants is that the House Resolution under which the Committee acted is invalid.

---

[1] U.S.C.A. Title 2, § 192, reads as follows: "Every person who having been summoned as a witness by the authority of either House of Congress to give testimony or to produce papers upon any matter under inquiry before either House, or any joint committee established by a joint or concurrent resolution of the two Houses of Congress, or any committee of either House of Congress, willfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry, shall be deemed guilty of a misdemeanor, punishable by a fine of not more than $1,000 nor less than $100 and imprisonment in a common jail for not less than one month nor more than 12 months."

■ It is elementary that for use in connection with the exercise of its power to legislate and to appropriate funds, the Congress has the authority to secure information. Ordinarily legislation cannot be intelligently enacted without previously ascertaining facts from which conclusions can be drawn as to whether need for legislation exists and, if so, what form the legislation should assume. Similarly, detailed data are necessary in connection with the appropriation of moneys. Historically the control of the purse is one of the basic and vital functions of the legislative branch of the Government. Whenever necessary or desirable the Congress may secure the requisite facts by study and research, or by procuring information from persons who volunteer it. The Congress, however, is not limited to these sources of knowledge. It has the right to compel the disclosure of factual material. At times this is the only method by which necessary data can be obtained. For this purpose, the Congress may issue subpoenas to require the attendance of witnesses and to exact the production of records and documents. When resort is had to this course, the customary practice is to delegate the duty to a Committee.

■ Manifestly, the sole purpose for which the Congress may carry on investigations and secure information is in connection with the exercise of its legislative function and with the appropriation of moneys. It may not, for example, compel the divulgence of information for the purpose of ascertaining whether a crime has been committed as a basis for a criminal prosecution, since this is a matter for the judiciary and for the prosecuting officers of the Government. On the other hand, if the same information is desired for use in connection with legislation, the Congress has a right to demand it. The information sought to be secured by a Congressional Committee must be germane to the legislative or the appropriating function.

■ In connection with the exercise of these powers, however, the Congress is not limited to securing information precisely and directly bearing on some proposed measure, the enactment of which is contemplated or considered. The collection of facts may cover a wide field. Obviously in order to act in an enlightened manner, it may be necessary and desirable for the Congress to become acquainted not only with the precise topic involved in prospective legislation, but also with all matters that may have an indirect bearing on the subject. For example, in connection with the regulation of interstate commerce, it may conceivably become desirable for Congress to secure facts bearing solely on some aspects of intrastate commerce. Or, in enacting criminal legislation, it may first become desirable to investigate conditions in States and localities involving violations of local law. In connection with appropriating funds and determining what allotments of moneys should be made, it may become desirable to obtain information covering a wide range. While the power of the Congress to carry on investigations is not without limit, nevertheless, the Congress has broad discretion in determining the subject matter of the study and the scope and extent of the inquiry. If the subject under scrutiny may have any possible relevancy and materiality, no matter how remote, to some possible legislation, it is within the power of the Congress to investigate the matter. Moreover, the relevancy and the materiality of the subject matter must be presumed. The burden is on one who maintains the contrary to establish his contention. It would be intolerable if the judiciary were to intrude into the activities of the legislative branch of the Government, and virtually stop the progress of an investigation, which is intended to secure information that Congress deems necessary and desirable in the proper exercise of its functions, unless the lack of materiality and relevancy of the subject matter is clear and manifest.

The authorities unanimously and conclusively support the foregoing views. Thus, in McGrain v. Daugherty, 273 U.S. 135, 174, 175, 47 S.Ct. 319,, 328, 71 L.Ed. 580, 50 A.L.R. 1, Mr. Justice Van Devanter discussed this question as follows:

"We are of opinion that the power of inquiry—with process to enforce it—is an essential and appropriate auxiliary to the legislative function. It was so regarded

and employed in American legislatures before the Constitution was framed and ratified. * * *

"A legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change; and where the legislative body does not itself possess the requisite information—which not infrequently is true—recourse must be had to others who do possess it. Experience has taught that mere requests for such information often are unavailing, and also that information which is volunteered is not always accurate or complete; so some means of compulsion are essential to obtain what is needed. All this was true before and when the Constitution was framed and adopted. In that period the power of inquiry, with enforcing process, was regarded and employed as a necessary and appropriate attribute of the power to legislate—indeed, was treated as inhering in it. Thus there is ample warrant for thinking, as we do, that the constitutional provisions which commit the legislative function to the two houses are intended to include this attribute to the end that the function may be effectively exercised."

In the cited case the Supreme Court observed that it is not necessary for the Resolution directing the investigation to avow in express terms that it is intended to be in aid of legislation. If it appears that the matter to be investigated is relevant or material to some subject over which the Congress may legislate, or in respect to which it may appropriate funds, the power to conduct the investigation exists.

In the case of In re Chapman, 166 U.S. 661, 670, 17 S.Ct. 677, 681, 41 L.Ed. 1154, Mr. Chief Justice Fuller observed that it was not necessary that the Resolution authorizing the investigation should declare in advance what the Congress "meditated doing when the investigation was concluded."

In Barry v. United States ex rel. Cunningham, 279 U.S. 597, 619, 49 S.Ct. 452, 457, 73 L.Ed. 867, Mr. Justice Sutherland stated: "The presumption in favor of regularity, which applies to the proceedings of courts, cannot be denied to the proceedings of the Houses of Congress, when acting upon matters within their constitutional authority."

In United States v. Norris, 300 U.S. 564, 573, 57 S.Ct. 535, 538, 81 L.Ed. 808, Mr. Justice Roberts stated: "That it is within the constitutional province of Congress to institute investigations and to compel evidence with a view to possible exercise of its legislative function * * * is settled."

In a recent case in this jurisdiction, Townsend v. United States, 68 App. D. C. 223, 226, 95 F.2d 352, 355, Mr. Justice Justin Miller in commenting on an objection that the investigating Committee involved in that case never recommended any remedial legislation, made the following observation: "This is clearly beside the point. The act for which appellant was indicted occurred before the hearings of the committee were concluded. Its power to conduct a hearing for legislative purposes is not to be measured by recommendations for legislation of their absence."

That the subject of un-American and subversive activities is within the investigating power of the Congress is obvious. Conceivably, information in this field may aid the Congress in legislating concerning any one of many matters, such as correspondence with foreign governments (U.S.C.A. Title 18, § 5); seditious conspiracy (Id. § 6); prohibition of undermining the morale of the armed forces (Id. § 9); suppression of advocacy of overthrow of the Government (Id. § 10); the registration of organizations carrying on certain types of propaganda (Id. §§ 14 and 15); qualifications for entering and remaining in Government service; the authorization of Governmental radio broadcasts to foreign countries; and other innumerable topics. Similarly such information may be helpful in appropriating funds.

The argument is advanced by counsel that the Resolution is invalid because it relates to freedom of speech, in respect to which the Congress may not legislate. This contention is without merit. Freedom of speech is, indeed, one of the fundamental rights of every person in a democracy. It is guaranteed and safeguarded by the First Amendment to the

Constitution of the United States and is one of the basic rights of every inhabitant of the United States. No one who has any conception of the meaning of democracy would tolerate any encroachment or inroad on freedom of speech. It is not to be lightly assumed, however, that the Congress will enact legislation repugnant to the Constitution. A presumption of validity attaches to every Act of Congress. The burden of proof is on the person attacking its constitutionality. A fortiori, the courts may not presume in advance that the Congress will transgress the Constitution. The courts are not the sole guardians of the Constitution. That duty is shared with the other branches of Government, who are under an equal obligation to observe the limitations of the fundamental instrument. It is not to be presumed that the Congress will ignore its duty. Moreover, the right of freedom of speech is, in itself, a qualified right. The First Amendment does not, for example, preclude the Congress from excluding obscene matter from the mails or from the channels of interstate commerce. It does not guarantee to any one the right to incite others to commit a crime. It does not preclude the Congress from punishing persons who advocate the overthrow of Government by force. It does not bar the Congress from limiting certain activities of Government employees, although similar activities are within the rights of all other citizens. Other limitations on the right of freedom of speech will occur to every thinking person. In any event, information to be obtained by this investigation is not limited in its use to legislation in respect to freedom of speech, but as heretofore indicated, may be utilized in respect to legislation on other subjects.

It is urged further that the Resolution is unconstitutional because it is too indefinite, in that the words "un-American" and "subversive" are not defined and do not have a precise and well-established meaning. In support of this contention, reliance is placed on the general proposition of law that a penal statute which does not provide an ascertainable standard of guilt is violative of the due process clause of the Fifth Amendment and is, therefore, invalid. This doctrine has been estabilshed by a line of cases of which United States v. L. Cohen Grocery Co., 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516, 14 A.L.R. 1045, is typical. These decisions, however, are directed solely to penal statutes and relate to the well-known rule of law that no one should be punished criminally for an act which at the time he committed it he was unable to ascertain would be considered a crime. This rule, however, does not apply to statutes of other types.

There is nothing to the contrary in the case of M. Kraus & Bros. v. United States, 327 U.S. 614, 620, 66 S.Ct. 705, 90 L.Ed. 894. That case involved the validity of a regulation issued by the Administrator of the Office of Price Administration, to which a criminal sanction was attached. The court held that the regulation was subject to the same test as a penal statute. This line of reasoning, however, does not apply to the Resolution involved in the instant case.

No doubt many an Act of Congress may be found in which general terminology is intentionally or unintentionally employed. This is true of the present Resolution. The Committee is directed to investigate un-American and subversive activities. The exact scope of an investigation cannot always be charted and bounded in advance with the precision of a survey. In conducting a research, an inquiry, or an investigation, some discretion must be left to those to whom the task is entrusted, if the objective is to be attained. If we analyze the words "un-American" and "subversive" as used in the Resolution, there are some activities which everyone will agree are un-American and subversive, and there are others which everyone will place in the opposite group. Between the two extremes, no doubt, there will be some gradations in respect to which persons may well differ. There may well be differences of opinion as to the exact application or meaning of these terms, or as to whether some particular activity falls in one class or the other. This circumstance does not deprive the Congress of the power to investigate un-American and subversive activities, and for the purposes of carrying out its duties to vest in the investigating Committee the discretion to make a prelim-

inary determination as to what activities are comprised within these two terms.

■ It is argued, however, that a person who is directed to appear or produce documents before the Committee may be at sea in endeavoring to determine whether the Committee is acting within its jurisdiction. It must be borne in mind, however, that the statute (U.S.C.A. Title 2, § 192) which punishes failure to comply with a subpoena or to answer questions, is definite and makes a willful default a misdemeanor. A person who declines to comply with a direction of the Committee on the basis of a claim that the Resolution creating it is invalid, or that the Committee is exceeding its jurisdiction, acts at his peril. The provisions of an investigating Resolution are not drawn primarily for the benefit of a witness, but are framed for the guidance of the Committee. There are many situations in which a person assumes a risk in determining whether what he intends to do constitutes a crime. This is true, for example, in respect to violations of the anti-trust laws, because what constitutes an illegal restraint of trade is frequently a debatable matter.

In Nash v. United States, 229 U.S. 373, 377, 33 S.Ct. 780, 781, 57 L.Ed. 1232, Mr. Justice Holmes aptly remarked: " * * * the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death."

In the light of the foregoing considerations, it is the conclusion of this Court that the House Resolution creating the Committee on Un-American Activities is valid.

■ It is further urged that the subpoenas as set forth in the indictments, are too broad and are, therefore, violative of the Fourth Amendment. Whether a subpoena is too broad cannot always be determined from the terms of the document, but is a mixed question of law and fact. Consequently, the question should not be determined on a motion to dismiss the indictment for insufficiency. It may be observed that each of the subpoenas is limited to documents relating to a specific topic, or is restricted to specified periods, or both. Somewhat similar subpoenas were held valid in Brown v. United States, 276 U.S. 134, 138, 48 S.Ct. 288, 72 L.Ed. 500; and Wheeler v. United States, 226 U.S. 478, 483, 33 S.Ct. 158, 57 L.Ed. 309. Moreover, there may conceivably be a question as to whether under the circumstances of this case, the defendants are entitled to assert the privilege guaranteed by the Fourth Amendment, United States v. White, 322 U.S. 694, 704, 64 S.Ct. 1248, 88 L.Ed. 1542, 152 A.L.R. 1202. These matters can be determined only at the trial on the facts.

■ Finally, in the case of United States v. Edward K. Barsky et al. it is urged that the first, or conspiracy count, of the indictment is insufficient in that it charges the defendants with a conspiracy to defraud the Government without, however, averring that the conspiracy was to be effectuated by deceit, craft, or trickery, or by means that are dishonest. Reliance is placed on Hammerschmidt v. United States, 265 U.S. 182, 188, 44 S.Ct. 511, 68 L.Ed. 968, in support of this objection. The first count of the indictment further charges, however, that the defendants conspired to commit an offense against the United States by violating U.S.C.A. Title 2, § 192. Since the allegation last mentioned sets forth a conspiracy that is subject to criminal prosecution, the first count of the indictment is sufficient. Consequently, it is not necessary to determine whether the additional allegations, that are assailed by the defendants, are sufficient if they stood alone.

Motions to dismiss indictments denied. Alternative motions for bills of particulars are also denied.