UNITED STATES of America, Appellee,

v.

Leslie ANDERSON, Appellant.

UNITED STATES of America, Appellee,

v.

James A. ANDERSON, Appellant.

Nos. 77–1647, 77–1648.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1977.

Decided June 21, 1978.

Rehearing and Rehearing En Banc
Denied July 13, 1978.

H. David Blair of Murphy, Blair, Post & Stroud, Batesville, Ark., for appellants; Harry L. Ponder, Walnut Ridge, Ark., on the brief.

W. H. Dillahunty, U. S. Atty., and A. Douglas Chavis, Asst. U. S. Atty., Little Rock, Ark., for appellee.

Before LAY, BRIGHT and HENLEY, Circuit Judges.

LAY, Circuit Judge.

Defendants Leslie Anderson and James A. Anderson were convicted of conspiring to defraud the United States, in violation of 18 U.S.C. § 371, after a jury trial in the United States District Court for the Eastern District of Arkansas. In addition, Leslie Anderson was convicted on four counts charging that he made a false or fraudulent statement in a matter within the jurisdiction of a federal agency in violation of 18 U.S.C. § 1001. Both defendants were fined and sentenced to terms of imprisonment.[1]

■ On appeal the defendants challenge the validity of their convictions on the conspiracy charge, asserting that the evidence was insufficient to establish that they engaged in a conspiracy to defraud the United States.[2] Leslie Anderson also challenges

---

1. Leslie Anderson was sentenced to imprisonment for two years on the indictment as a whole. James Anderson received a sentence of two years, with six months to be served in a jail-type institution and the balance to be spent on probation.

2. The defendants also argue that (1) the district court erred in refusing to grant defendants' motion to strike certain alleged surplusage in the indictment; (2) the district court erred in admitting evidence relating to those parts of the indictment alleged to be surplusage; and (3) the district court erred in instructing the jury. We have examined each of these contentions and find them to be without substantial merit. The allegations which the defendants attack as surplusage were relevant to the conspiracy charge and were not inflammatory or prejudicial. We therefore decline to disturb the trial court's denial of the defendants' motion to strike the allegations. See Dranow v. United States, 307 F.2d 545, 558 (8th Cir. 1962). Since the allegations were properly included in the indictment, admission of evidence in support of the allegations was proper.

The defendants urge that the trial court erred in refusing to specifically instruct the jury that if they found a conspiracy existed but was intended to defraud some entity other than the federal government, a verdict of not guilty was required. We have examined the charge as a whole and find that it adequately instructed the jury.

the sufficiency of the evidence on the false statement charges. We affirm the convictions on Count I. We reverse Leslie Anderson's conviction on Counts II–V, and remand the cause for resentencing of defendant Leslie Anderson.

The events which gave rise to the charges against the defendants involved two federally funded road construction projects in Sharp County, Arkansas. Defendant Leslie Anderson was the County Judge of Sharp County during the period of time alleged in the indictment, and as such he was a general financial officer of the county. In 1975 Judge Anderson obtained approval for two contracts relating to a project for paving and other improvements on the Grange · Road, a county road between Arkansas Highway 230 and Arkansas Highway 115 in Sharp County. Both contracts were approved under a program administered through the Federal Highway Administration and the Arkansas State Highway Department whereby federal funds are used to pay 70 per cent of the total cost, including labor and materials, of a project and state or local funds pay the remaining 30 per cent of the total cost.

In a typical situation, the Arkansas State Highway Department works with the county in preparing a proposed plan for a road construction project. If the proposal is approved by the Federal Highway Administration, state representatives and county personnel then develop detailed plans and specifications for the job, including itemized estimates of the cost of each phase of the project. If these plans and specifications are approved by the federal agency, federal funds are earmarked for the project and a contract is executed which commits such funds in the amount of 70 per cent of the total estimated cost. In the present case, Sharp County was to perform the construction work and furnish all labor and materials necessary for completion of the Grange Road project.

The first contract for improvements on the Grange Road was executed on March 4, 1975. Included in the total projected cost was an estimate for labor and materials for fencing work in the amount of $31,118.00. Work began pursuant to the contract in April of 1975. Defendant James A. Anderson, Judge Leslie Anderson's son, performed the fencing work specified in the contract during May and June of 1975. At the direction of Judge Anderson, a number of county workers employed under the Comprehensive Employment and Training Act of 1973 (CETA), 29 U.S.C. § 801 et seq., performed labor for James A. Anderson on the fencing portion of the project.

Under the CETA program, Sharp County was authorized to hire a number of employees for work in the public sector. The county paid the workers' wages but was subsequently reimbursed in full by the United States Department of Labor through a system administered by the Arkansas Manpower Council. Judge Anderson submitted reimbursement invoices to the state office in June and July for work performed in May and June, respectively. The invoices listed wages paid by the county to a number of CETA employees, including those workers who had performed labor for James A. Anderson on the fencing project.

James A. Anderson purchased materials for the fencing work in April or early May. Acting as a straw man for James A. Anderson, a friend of both of the defendants named G. A. Perrin submitted the only bid on the job on June 6, 1975, the day after James A. Anderson had completed the work. The bid was in the amount of $32,000.00, whereas the amount the highway department contract allowed was $31,118.00.

In July of 1975, Perrin submitted a false claim against Sharp County in the amount of $31,118.00 for the fencing work performed on the first Grange Road contract. The claim included the cost of labor which had been furnished to James A. Anderson under the CETA program at no cost to him. This claim was honored by Judge Anderson and paid by the county, which was eventually reimbursed for 70 per cent of the claim with federal funds committed to the Grange Road project.

A similar sequence of events took place with regard to the second contract, executed on June 30, 1975. Again James A. Anderson performed the fencing work with the aid of CETA employees of Sharp County and through Perrin, the straw man, obtained compensation for the full contract estimate, including the cost of the labor rendered by the CETA employees.

Thus, although James A. Anderson was able to complete the fencing work using "free" labor, he was able to collect payment based on the estimated cost for labor and materials submitted in the plans and specifications approved by the Federal Highway Administration. Furthermore, although CETA workers were to be used by the county in jobs in the public sector, at the direction of Judge Anderson some CETA workers employed by Sharp County were actually performing duties for the benefit of James A. Anderson. This situation formed the basis of the conspiracy charged in Count I of the indictment.

*Conspiracy Charge.*

The defendants argue that the evidence introduced at trial was insufficient to establish an agreement between them, and further that if any agreement did exist its object and effect was not to defraud the United States. We are satisfied that the evidence, taken in the light most favorable to the government and drawing all inferences in support of the jury verdict, was sufficient to establish an agreement between the defendants to defraud some governmental entity. *See Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). We also believe that the jury was warranted in concluding that the scheme carried out by the defendants had the intended effect of defrauding the federal government.

The defendants assert that since no regulation prohibited the use of CETA employees on county projects receiving other types of federal funding, and since the Federal Highway Administration had obligated itself to pay the amounts submitted by James A. Anderson in his claims for fencing work,

no agency of the federal government was defrauded. In essence, defendants' argument is that the federal government did not pay out any more money than it was legally obligated to pay; that the "double dipping" by the Andersons was a fraud against Sharp County but not the United States. We disagree.

■ It is clear that a conspiracy to "defraud the United States" within the meaning of 18 U.S.C. § 371 need not result in a monetary loss to the federal government.

To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest. It is not necessary that the government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane or the overreaching of those charged with carrying out the governmental intention.

*Hammerschmidt v. United States,* 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924). *See also Dennis v. United States,* 384 U.S. 855, 861, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966).

■ As a result of the inflated claim submitted to Sharp County by James A. Anderson, the federal government paid 70 per cent of the overstated cost of the fencing work. Assuming, as the defendants contend, the county could make up its 30 per cent contribution with labor including that of CETA employees, the obvious plan was not to save the county money, but to afford a means of concealing the payment of false labor costs to James A. Anderson. Even though the Federal Highway Administration spent no more than originally contemplated according to the estimates contained in the contract, the defendants' actions nonetheless interfered with the government's interest in "seeing that the entire project [was] administered honestly and efficiently and without corruption and

waste." *United States v. Hay*, 527 F.2d 990, 998 (10th Cir. 1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1666, 48 L.Ed.2d 176 (1976). *See Harney v. United States*, 306 F.2d 523, 527 (1st Cir.), *cert. denied*, 371 U.S. 911, 83 S.Ct. 254, 9 L.Ed.2d 171 (1962). *See also United States v. Thompson*, 366 F.2d 167, 170–73 (6th Cir.), *cert. denied*, 385 U.S. 973, 87 S.Ct. 512, 17 L.Ed.2d 436 (1966); *Wagner v. United States*, 263 F.2d 877, 880 (5th Cir. 1959); *United States v. Weinberg*, 226 F.2d 161, 165–67 (3d Cir. 1955), *cert. denied*, 350 U.S. 933, 76 S.Ct. 305, 100 L.Ed. 815 (1956).

■ In addition to the effect of the defendants' activities on the highway program, the use of CETA employees for the sole benefit of James A. Anderson on his fencing "subcontract" thwarted the intended purpose of the CETA program, which is to provide additional funding for jobs in the public sector. As the evidence at trial indicated, the CETA employees involved in this case were to be used in public, not private, employment.[3] Thus, the defendants' scheme to misuse CETA employees to provide "free" labor to the advantage of James A. Anderson also supported the charge of conspiracy to defraud the United States. *See United States v. Holt*, 108 F.2d 365 (7th Cir.), *cert. denied*, 309 U.S. 672, 60 S.Ct. 616, 84 L.Ed. 1018 (1940).

*False Statement Charges.*

The false statement charges upon which defendant Leslie Anderson was convicted were based on the four reimbursement invoices signed by him and submitted to the Arkansas Manpower Council in June and July 1975 so that Sharp County could receive federal funds as reimbursement for wages paid to CETA employees, including those CETA employees assigned to work for James A. Anderson on the fencing project. Each reimbursement invoice contained the following certification:

I CERTIFY THAT (a) the State of Arkansas-CETA, Office of the Governor has not been billed for the services covered by this invoice; (b) funds have not been received from the State or expended for such services under any other contract agreement or grant; (c) the amount(s) claimed by this invoice constitute(s) allowable costs/expenditures under the terms of the contract agreement or grant; (d) all amounts for federal income, unemployment, and FICA taxes due through the end of the preceding quarter have been paid.

The government contends that, since federal highway funds irrevocably committed to the Grange Road project included an allocation for the services performed by CETA workers on the fencing job, clause (b) of the certification was false and by submitting the reimbursement invoices Judge Anderson violated 18 U.S.C. § 1001.[4]

Judge Anderson asserts that the evidence adduced at trial failed to establish that clause (b) of the certification was false. We find the clause to be ambiguous. A reasonable interpretation of the terms "received" and "expended" could be that other federal funds have actually been paid out or actually received by the county for the work done. In the present case the federal funds had only been committed to the

---

3. Defense witness Jo Jackson, a former director of the Arkansas Manpower Council, testified that CETA employees could be used like any other county employee "so long as it was in a public sector." She further stated that use of CETA employees on private projects was prohibited. The regulations governing Title II CETA grants state:

> Funds provided under Title II which are used for public service employment shall only be used to fund public service needs which have not been met and to implement new public services. . . .

29 C.F.R. § 96.23(a).

4. Title 18 U.S.C. § 1001 provides:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

project but were still held by the Arkansas State Highway Department. Furthermore, in the context of the overall application the meaning of the phrase "any other contract agreement or grant" is somewhat unclear. A reasonable construction of the phrase would be that no prior CETA funds have been expended, rather than that no funds from some other unrelated federal grant have been expended. Under the government's theory every application for reimbursement for use of CETA employees on highway projects where there was any use of federal funds would be subject to a false statement charge under 18 U.S.C.A. § 1001. We cannot agree.

In light of these ambiguities, under Counts II–V of the indictment, it was incumbent upon the government to introduce proof sufficient to establish the falsity of the statements as well as the defendant's knowing and willful submission of the statements. In carrying out that burden the government must negative any reasonable interpretation that would make the defendant's statement factually correct. *See United States v. Steinhilber*, 484 F.2d 386, 389–90 (8th Cir. 1973); *United States v. Diogo*, 320 F.2d 898, 907 (2d Cir. 1963). Our review of the record compels us to find that the government failed to clarify the facial ambiguities in the certification clause, and therefore failed to establish that Leslie Anderson willfully submitted the reimbursement invoices knowing the certifications to be false. We thus reverse Judge Anderson's conviction on Counts II–V.

*Sentencing.*

Although defendant Leslie Anderson was convicted on five separate counts, the trial court imposed a general sentence of two years on the indictment as a whole. We have recognized the difficulties which arise from the imposition of a general unapportioned sentence. *Peoples v. United States*, 412 F.2d 5, 7 (8th Cir. 1969). In view of the fact that we reverse four of the five counts upon which the general sentence imposed here was based, we remand Case No. 77–1647 so that defendant Leslie An-

derson may be resentenced on Count I. *Cf. United States v. Moynagh*, 566 F.2d 799, 805 (1st Cir. 1977).

The judgment in Case No. 77–1648 is affirmed. The judgment in Case No. 77–1647 is affirmed in part, reversed in part and remanded.

HENLEY, Circuit Judge, concurring in part and dissenting in part.

I concur with the majority in its decision that the conviction of the defendant, Leslie Anderson, on the substantive counts of the indictment should be reversed and that a judgment of acquittal on those counts should be entered. I also agree that in the circumstances Judge Anderson should be resentenced on Count I assuming that his conviction on that count is to be upheld.

However, in my opinion the conviction of both defendants on Count I should be reversed and judgments of acquittal on that count should be entered. For that reason I respectfully dissent from the majority's decision with respect to the count in question.

I think that the jury was fully justified in finding that the defendants conspired to defraud Sharp County, that the result of their conspiracy was to inflict some financial loss on the County and to require the federal government ultimately and indirectly to pay twice for some of the same work that the CETA employees performed on the Grange Road project.

But, as far as Count I is concerned, the question is not whether Judge Anderson and his son, and perhaps others, conspired to defraud the County or whether or to what extent their plan succeeded. The question is whether they conspired to defraud the United States or any of its agencies in violation of 18 U.S.C. § 371.

I recognize that the concept of "fraud against the government" has been defined broadly in cases arising under § 371. Such a conspiracy is not limited to schemes to cheat the government or its agencies out of their money or property. As the majority opinion correctly recognizes, the government is defrauded in legal contemplation if

federal programs or functions are knowingly interfered with, subverted or obstructed. *See* the cases cited in the majority opinion.

The opinion of the court characterizes the alleged conspiracy as having been one to divert County funds to James Anderson in the manner described in the court's opinion and with the ultimate impact on the federal agencies that has been mentioned. And, the majority says that such a scheme would necessarily interfere with the government's interest in seeing its road aid program (the 70–30 program) and its public employment program (CETA) administered honestly and efficiently and without corruption and waste and was, therefore, a conspiracy to "defraud" the Transportation Department and the Labor Department.

Conceding arguendo that the conspiracy postulated by the majority would be a conspiracy to defraud the United States and its agencies, that conspiracy in my view is not the one charged in the indictment and is not the one that the government undertook to prove at the trial.

The thrust of the conspiracy charge against the Andersons was not that the CETA employees of the County had been assigned to a project that had been subcontracted to a private party, but, on the other hand, was that the employees in question were assigned to work on a road project that ultimately and indirectly would be paid for to the extent of 70% with federal funds disbursed by the Department of Transportation to reimburse the Arkansas State Highway Department for funds that it had paid over to the County on approved estimates as the work progressed.

Under the government's theory, at least one of the two federal agencies would have been defrauded even if the fencing work on the Grange Road had not been subcontracted at all. In other words, under that theory the government would have been defrauded automatically and the County unjustly enriched by the mere assignment of CETA employees to a project that ultimately was being funded in whole or in part with federal money from another source. However, the government has cited nothing by way

of authority to sustain such a fraud per se theory.

The assignment of CETA personnel to the Grange Road project did not cost the government any money that it would not have spent anyway. Nor did the assignment interfere with or obstruct either the CETA program or the road aid program. The purpose of the former program was to give work to people who needed it; the purpose of the latter program was to enable counties to build roads; when the CETA employees were assigned to the Grange Road project, both of the federal agencies involved got exactly what they had bargained for.

As stated, I would reverse the conviction of both defendants on Count I as well as the conviction of Judge Leslie Anderson on Counts II–V.