**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James R. HAGA, Jr.,
Defendant-Appellant.**

**No. 86–1646.**

United States Court of Appeals,
Fifth Circuit.

July 1, 1987.

Lawrence J. Praeger, Vincent W. Perini, Dallas, Tex., for defendant-appellant.

Jacqueline H. Eagle, Washington, D.C., Marvin Collins, U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before RANDALL, GARWOOD and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Appellant James R. Haga, Jr. ("Haga"), was indicted on charges that he conspired "to commit offenses against the United States," in violation of 18 U.S.C. § 371, by participating in the sale of anabolic steroids and androgenic hormones without prescriptions in contravention of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301–392 (the Act), and on three charges of substantive violations of the Act. Tried before the bench, he was convicted of three misdemeanor substantive offenses and of a felony conspiracy offense.

In his appeal, appellant challenges only the conspiracy conviction, contending that he was convicted of conspiring to defraud the United States rather than of conspiring to commit offenses against the United States and, because he was not indicted or tried for conspiring to defraud the federal government, that his conviction must be reversed. We determine that the indictment did not allege the section 371 offense of which appellant was convicted, and, accordingly, we reverse his conspiracy conviction.

## I.

From 1982 until mid–1984, two licensed pharmacists, Cecil C. Kennedy, Jr. ("Kennedy"), and Albert N. Helsley, Jr. ("Helsley"), operated an illegal mail-order business from the Dallas, Texas area. The two ordered prescription drugs for delivery to a legitimate pharmacy but then sold drugs through the mail without requiring customers to have prescriptions. The prescription drugs they sold—primarily anabolic steroids and androgenic hormones—typically were purchased by body builders and weight lifters who sought to increase their muscle mass.

During the summer of 1984, the pharmacists hired appellant to take orders and to package and mail drugs, paying Haga a fixed weekly salary. Kennedy terminated his involvement in October 1984, and Hels-

ley died in January 1985. Thereafter, on his own, Haga continued to operate the mail-order business until his arrest in December 1985.

During the existence of the conspiracy, customers would contact the suppliers, specifying the types and quantities of drugs they wanted. They were sent drugs in the same form as the manufacturer had packaged them, billed for the drugs, and asked to send a cashier's check made out in the name of a nonexistent company to a post office box. The record contains nothing to indicate that any buyer was misled by or claimed to have been defrauded by the conspirators. However, the pharmaceuticals sold were drugs that could not be lawfully dispensed except by a prescription or on a doctor's orders, and one drug sold was a veterinary prescription medicine approved for use only on horses.

A grand jury indicted appellant and Kennedy for conspiring "to commit offenses against the United States, to wit, violations ... of Title 21, United States Code, Sections 301–392," in violation of 18 U.S.C. § 371 (count I). The indictment also charged appellant with three counts of having distributed prescription drugs in violation of 21 U.S.C. §§ 331(a) and 333(b) (counts XVI, XVII, and XVIII).[1]

Haga was convicted of three substantive offense violations of section 331, misdemeanors under section 333(a). These three convictions have not been challenged on appeal. Appellant challenges his section 371 felony conspiracy conviction under Count I on the ground, among others, that the indictment failed to allege a conspiracy to defraud the United States, the offense of which appellant was convicted.[2] We agree, and accordingly reverse his conviction on this count.

**II.**

The central question presented requires an analysis of the relevant statutes, the language in the conspiracy count of the indictment, and the district court's findings and conclusions.

### A. The statutes

We note at the outset that our determination of the reach of a criminal offense statute is governed by "the traditional canon of construction which calls for the strict interpretation of criminal statutes and rules in favor of defendants where substantial rights are involved." *Smith v. United States*, 360 U.S. 1, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041 (1959). Furthermore, to the extent that an offense statute is ambiguous, we are guided by the rule of lenity: " 'When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity.' " *Ladner v. United States*, 358 U.S. 169, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958) (citations omitted).

### 1. The conspiracy offense statute

Under these canons of statutory construction, conduct can be prosecuted under the general conspiracy offense statute, 18 U.S.C. § 371, only if "the defendant's conduct 'plainly and unmistakably' falls within the proscription" of the statute. *United States v. Porter*, 591 F.2d 1048, 1055 (5th Cir.1979) (quoting *United States v. Gradwell*, 243 U.S. 476, 37 S.Ct. 407, 410–11, 61 L.Ed. 857 (1917) ("[Because] there are no common-law offenses against the United States, ... before a man can be punished as a criminal under the Federal law his case must be 'plainly and unmistakably'

---

1. All the other counts (counts II through XV) of the indictment related solely to Kennedy, and did not charge appellant.

2. On this count Haga was sentenced to a $5,000 fine, imposition of sentence as to imprisonment was suspended, and Haga was placed on five years' probation. He was also assessed $50 on count I, under 18 U.S.C. § 3013. As to the substantive offenses, Haga was fined $1,000 (and assessed $25 under section 3013) on each of counts XVI, XVII, and XVIII; he was also sentenced to ninety days' confinement on count XVI. He has served the confinement and paid the fines (and assessments) on the substantive counts.

within the provisions of some statute....")  (citations omitted)).[3]

Section 371 provides (emphasis added):

"If two or more persons conspire *either* to commit any offense against the United States, *or* to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

"If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor."

Cases construing section 371 have made it plain that the "commit any offense" clause and the "defraud the United States" clause describe different criminal offenses, and that, although an indictment brought under section 371 may allege either or both offenses, a defendant may be convicted only under the particular criminal offense clause or clauses framed in the indictment. *E.g., United States v. Rosenblatt,* 554 F.2d 36 (2d Cir.1977); *see also United States v. Dennis,* 384 U.S. 855, 86 S.Ct. 1840, 1846, 16 L.Ed.2d 973 (1966) (describing the "conspiracy to defraud" clause and the "conspiracy to commit the substantive offense" clause as alternative clauses); *id.* at 1845–46, 1845 n. 5 (noting that the conduct involved in a conspiracy to defraud the United States may include actions that could also be charged as offenses against the United States).

The Supreme Court has also cautioned that "indictments under the broad language of the general conspiracy statute [18 U.S.C. § 371] must be scrutinized carefully....," *id.* at 1843,[4] and has indicated that a central question is whether "the allegation as to conspiracy to defraud ... properly reflects the essence of the alleged offense," *id.* at 1845.

In *Hammerschmidt v. United States,* 265 U.S. 182, 44 S.Ct. 511, 68 L.Ed. 968 (1924), the Court circumscribed the reach of the predecessor to section 371, in the context of an indictment charging "a conspiracy [to defraud based on actions intended] to defeat the selective draft by inducing the persons required to register under it to defeat its purpose by refusing to register." *Id.* at 511. Holding that the indictment should have been quashed and explaining some limits of the "conspiracy to defraud" clause, the Court wrote:

"To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest. It is not necessary that the government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane, or the overreaching of those charged with carrying out the governmental intention. It is true that the words 'to defraud' as used in some statutes have been given a wide meaning,

---

**3.** As discussed more fully below, the government has advocated, both below and on appeal, a liberal construction of the Food, Drug, and Cosmetic Act on the theory that "because the Act is a public health statute, it should be broadly construed to effectuate its public health purpose," citing *United States v. Park,* 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975), and *United States v. An Article of Drug (Bacto-Unidisk),* 394 U.S. 784, 89 S.Ct. 1410, 22 L.Ed.2d 726 (1969). One issue in *Park* was whether, under the facts of that case, the statute would allow prosecution of a corporate officer as a "person" as defined by the Act; in *Bacto-Unidisk,* the central question was whether an antibiotic screening disk was a "drug" for purposes of the Act. We find no suggestion in either decision that the Su-

preme Court views the Act as reversing the usual rules of construction applied to statutes defining criminal offenses. *See United States v. Beam,* 686 F.2d 252, 258 & n. 10 (5th Cir.1982).

**4.** *See also Rosenblatt, supra,* at 40 ("The terms 'conspiracy' and 'defraud,' when used together, have a 'peculiar susceptibility to a kind of tactical manipulation which shields from view very real infringement on basic values of our criminal law.' ... Accordingly, conspiracy-to-defraud prosecutions are 'scrutinized carefully.' ") (quoting Goldstein, *Conspiracy to Defraud the United States,* 68 Yale L.J. 405, 409 (1959), and *Dennis, supra,* at 1840).

wider than their ordinary scope....
[However, the construction of 'defraud'
in *Horman v. United States*, 53 C.C.A.
570, 116 F. 350 (6th Cir.1902)] cannot be
used as authority to include within the
legal definition of a conspiracy to de-
fraud the United States a mere open
defiance of the governmental purpose to
enforce a law by urging persons subject
to it to disobey it." *Id.* at 512.[5]

*Hammerschmidt* did not involve the partic-
ipation of a federal official in a conspiracy
or some fraudulent claim on the public fisc
or for governmental benefits; the opinion
instructs that—at least absent such
factors—even concerted conduct encourag-
ing violations of federal law is not of itself
a conspiracy to defraud the government.
*Hammerschmidt* also suggests that, even
if a conspiracy to violate a specific federal

law may be prosecuted under the "commit
any offense" clause of section 371, a crimi-
nal prosecution under the "conspiracy to
defraud" clause requires a showing of
more than completely external interference
with the working of a governmental pro-
gram or disregard for federal laws.

Post-*Hammerschmidt* cases based on
section 371 "conspiracy to defraud" indict-
ments involving intangible governmental
rights ordinarily have described clear inter-
ference and active contact with governmen-
tal agency functions.[6] Analogously, sec-
tion 371 "conspiracy to defraud" indict-
ments typically include language indicating
that the conspiracy defrauded the govern-
ment by actively interfering with some spe-
cific function in some specified affirmative
manner.[7]

**5.** See *United States v. Curry*, 681 F.2d 406, 422–
24 (5th Cir.1982) (concurring opinion), as to
why it may be appropriate to give "defraud" a
somewhat broader (though not wholly elastic)
meaning in section 371 (and predecessor stat-
utes) than in other criminal law contexts.

**6.** *E.g., Dennis, supra,* at 1843–46 (discussing and
upholding the validity of an indictment based
on the use of false affidavits to obtain the servic-
es of the National Labor Relations Board);
*United States v. Bayer*, 331 U.S. 532, 67 S.Ct.
1394, 91 L.Ed. 1654 (1947) (upholding convic-
tions on a conspiracy to defraud the United
States "by depriving it of the faithful services of
an Army officer"); *Glasser v. United States*, 315
U.S. 60, 62 S.Ct. 457, 462–63, 86 L.Ed. 680 (1942)
(discussing and upholding indictment based on
conspiracy to corrupt federal prosecution); *see
also Bridges v. United States*, 346 U.S. 209, 73
S.Ct. 1055, 97 L.Ed. 1557 (1953) (involving a
"defraud" indictment charging a conspiracy to
file false statements to obtain a certificate of
naturalization; reversing the conviction on limi-
tations grounds); *United States v. Shoup*, 608
F.2d 950, 955–59 (3d Cir.1979) (investigator
hired by a United States Attorney to study vot-
ing machine problems indicted for "softening"
his report); *United States v. Del Toro*, 513 F.2d
656, 663–64 (2d Cir.) (involving subversion of
federal housing program administered by state
and local officials), *cert. denied,* 423 U.S. 826, 96
S.Ct. 41, 46 L.Ed.2d 42 (1975). We observe that
an interstate arson and insurance fraud scheme
that apparently involved no federal property,
program, agency, or official was described in
*Hall v. United States*, 413 F.2d 45, 46 (5th Cir.
1969), as a conspiracy to "defraud[ ] the United
States," but our reading of *Hall* and a related
opinion, *Blackwell v. United States*, 405 F.2d 625
(5th Cir.), *cert. denied,,* 395 U.S. 962, 89 S.Ct.
2104, 23 L.Ed.2d 747 (1969), indicates that the

defendant in *Hall* was more probably prose-
cuted and convicted under the conspiracy "to
commit any offense" clause of section 371 rath-
er than the conspiracy to defraud clause noted
in the opinion.

**7.** *E.g., Glasser, supra,* at 462 (quoting the indict-
ment, which alleged a conspiracy to " 'defraud
the United States of and concerning its govern-
mental function to be honestly, faithfully and
dutifully represented in the courts of the United
States ... free from corruption, improper influ-
ence, dishonesty, or fraud' "); *Haas v. Henkel*,
216 U.S. 462, 30 S.Ct. 249, 252–53, 54 L.Ed. 569
(1910) (describing indictment alleging two con-
spiracies: (1) to bribe a federal employee to
cause the Department of Agriculture to issue
false cotton crop reports, and (2) to defraud the
United States by inducing the employee to give
advance cotton crop information); *id.* at 253
(paraphrasing the indictment, which named the
agency and the means whereby it was defraud-
ed); *United States v. Burgin*, 621 F.2d 1352, 1359
(5th Cir.) (quoting indictment, which named the
agency and described the functions interfered
with), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 574,
66 L.Ed.2d 474 (1980); *Porter, supra*, at 1055,
1057 n. 7 (quoting indictments in "conspiracy to
defraud" cases); *Del Toro, supra*, at 663 (quot-
ing indictment naming agency and describing
manner in which "lawful governmental func-
tions" were obstructed); *United States v. Bayer*,
156 F.2d 964, 965 (2d Cir.1946) (stating that the
indictment charged a conspiracy to "defraud the
United States of the faithful and unbiased ser-
vices of United States army officers"), *rev'd,* 331
U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947);
*United States v. Pezzati*, 160 F.Supp. 787, 788
(D.Colo.1958) (listing specific agency and meth-
ods whereby it was defrauded), *rev'd on other
grounds sub nom. Dennis v. United States*, 302

While it is not altogether clear whether a "conspiracy to defraud" indictment must specifically allege that the conspiracy had as its object interfering with a particular, specific governmental function, it nevertheless seems plain that, for a section 371 "conspiracy to defraud" conviction to stand, the essence of the conspiracy must at least involve a showing of more than inadvertent contact with a governmental agency or incidental infringement of government regulations: a criminal charge of conspiracy to defraud the federal government must "reflect[ ] the essence of the alleged offense." *Dennis, supra*, at 1845.

### 2. *Food, Drug, and Cosmetic Act provisions*

The three substantive counts and the conspiracy charge lodged against appellant were founded on violations of 21 U.S.C. §§ 331 and 333. Section 333(a) defines a misdemeanor offense, and section 333(b) defines a felony offense (*see* 18 U.S.C. § 1):

"(a) Any person who violates a provision of section 331 of this title shall be imprisoned for not more than one year or fined not more than $1,000, or both.

"(b) Notwithstanding the provisions of subsection (a) of this section, if any person ... commits such a violation *with the intent to defraud or mislead,* such person shall be imprisoned for not more than three years or fined not more than $10,000, or both." 21 U.S.C. § 333 (emphasis added).

Section 331 lists conduct prohibited under the Act, including "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or *misbranded.*" 21 U.S.C. § 331(a) (emphasis added). A drug is "misbranded" if, for example, it is a prescription drug intended for human use but is distributed without a prescription.[8]

These provisions define distributing drugs in violation of section 331 at least as a misdemeanor (section 333(a)) or, if an intent to "defraud or mislead" can be shown, as a felony (section 333(b)). Although section 333(b) does not identify who must be defrauded or misled in order to trigger the felony provision of the statute, cases construing section 333(b) have ordinarily been based on a seller's intent to defraud or mislead *purchasers,* and not on the theory that a defendant has defrauded or misled the government by evading or violating its regulatory systems.[9]

F.2d 5, 7 (10th Cir.1962) (upholding sufficiency of indictment but reversing convictions on the admission of hearsay), *appeal after remand,* 346 F.2d 10 (10th Cir.1965), *rev'd on other grounds,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). *See also Burgin, supra,* at 1356 (stating that in "conspiracy to defraud" prosecutions not involving the participation of a public official, "[T]his court held [in *Porter, supra* ] that if the government has suffered no pecuniary loss from the activities set forth in the indictment, the indictment can stand only if it alleges that some lawful function of the government has been impaired, obstructed or defeated.").

**8.** *See* 21 U.S.C. § 353 (emphasis added):

"(b)(1) A drug intended for use by man which—

" ...

"(B) ... is not safe for use except under the supervision of a practitioner licensed by law to administer such drug ...

" ...

"shall be dispensed only (i) upon a written prescription of a practitioner licensed by law to administer such drug, or (ii) upon an oral prescription of such practitioner ..., or (iii) by refilling any such written or oral prescription.... *The act of dispensing a drug contrary to the provisions of this paragraph shall be deemed to be an act which results in the drug being misbranded* while held for sale." The district court apparently concluded that the prescription animal drug distributed by Haga was misbranded not under section 353 but under 21 U.S.C. § 352(f)(1), which defines a drug as misbranded if it does not carry adequate directions for use.

**9.** *E.g., United States v. Jamieson-McKames Pharmaceuticals, Inc.,* 651 F.2d 532 (8th Cir.1981), *cert. denied,* 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982); *United States v. Abbott Laboratories,* 505 F.2d 565 (4th Cir.1974), *cert. denied,* 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 671 (1975); *United States v. Industrial Laboratories Co.,* 456 F.2d 908 (10th Cir.1972); *United States v. Dr. David Roberts Veterinary Co.,* 104 F.2d 785 (7th Cir.1939); *see also United States v. Jessie Barnett,* 587 F.2d 252 (5th Cir.), *cert. denied,* 441 U.S. 923, 99 S.Ct. 2031, 60 L.Ed.2d 396 (1979).

### B. The indictment

■ Because appellant consistently opposed all reliance on the "conspiracy to defraud" theory by the prosecution below and on appeal,[10] we cannot construe the indictment "liberally ... in favor of validity," as we would if appellant had not challenged the indictment below.[11] Instead, we must follow the general rule of *Dennis* set forth above that indictments brought under section 371 must be strictly construed.

The indictment lodged against appellant included a single conspiracy count (Count I) and three substantive offenses (Counts XVI, XVII, and XVIII). Count I stated in pertinent part:

"1. That ... JAMES R. HAGA, Jr., and other persons ... did unlawfully, willfully and knowingly conspire ... *to commit offenses* against the United States, *to wit, violations of the Federal Food, Drug, and Cosmetic Act,* Title 21, United States Code, Sections 301–392.

"2. It was *a part of said conspiracy* that the defendants ... would and did, *with intent to defraud and mislead,* obtain, hold, promote, market, distribute and sell anabolic steroids, androgenic hormones and other prescription human and animal drugs, and did, *with the intent to defraud and mislead,* cause the prescription drugs to be ... sold without the authorization of a prescription ... in violation of Title 21, United States Code, Sections 331(a), 331(k), *333(b),* and 353(b).
"...

"4. It was *a further part of the conspiracy* that the defendants ... would and did, *with the intent to defraud and mislead the FDA, the Texas State Board of Pharmacy, and the Division of Food and Drugs of the Texas Department of Health, conceal and cover up their actual activities* in the following ways:
"...

"All in violation of Title 18, United States Code, Section 371." (Emphasis added).

### C. Trial and conviction

As noted above, there was no evidence presented at trial that appellant or his co-conspirators defrauded or misled any purchasers.[12] Furthermore, although the indictment (in counts XVI, XVII, and XVIII) charged three specific transactions in violation of 21 U.S.C. § 333(b) (the felony subsection), the district judge found appellant in respect to those counts guilty only of three lesser included misdemeanor substantive offenses, concluding that none of these three sales involved the "intent to defraud or mislead" which is required to invoke the felony penalties of subsection 333(b).[13]

10. For example, in his motion for a bill of particulars, appellant wrote respecting section 333(b): "This Defendant is entitled to a Bill of Particulars specifying and particularizing the person, agent, or agency of the United States who was allegedly defrauded or mislead [*sic*] by the Defendant and the nature of the fraudulent conduct." In a motion *in limine,* appellant asked that the court "prohibit the Government from representing to the jury ... that a sale of a prescription drug without a prescription by a willing sellor to a knowledgeable buyer ... constitutes fraud on the Government for the purpose of 21 U.S.C. Section 333(b)...."

11. *See United States v. Pheaster,* 544 F.2d 353, 361 (9th Cir.1976), *cert. denied,* 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977); *see also Hagner v. United States,* 285 U.S. 427, 52 S.Ct. 417, 420, 76 L.Ed. 861 (1932) (discussing failure to challenge indictment prior to verdict); *United States v. Shoup,* 608 F.2d 950, 959–61 (3d Cir. 1979) (same).

12. Evidence was introduced showing that Haga had handled the sale of three drugs to Bart Shields, who was cooperating with the government when he ordered the drugs. In that sale, Shields specified the type and quantity of drugs he wanted. Shields—who provided the only testimony from a purchaser—indicated that the sellers had never misrepresented the drugs they sold in that sale or in any earlier transaction and that he felt that he had never been defrauded or misled in his dealings with the conspirators.

13. The district court's findings of facts relevant to the substantive offenses included the following:
"7. Haga introduced the misbranded drug methandrostenolone into interstate commerce for delivery to Bart Shields ... but he did not do so with the intent to defraud or mislead.
"8. Haga introduced the misbranded drug testosterone cypionate into interstate commerce for delivery to Bart Shields ... but he did not do so with the intent to defraud or mislead.

The district court concluded that appellant was guilty of a felony conspiracy offense under section 371 because he had engaged in a business which by its very nature involved the secretive and unauthorized sale of prescription drugs, and that this sort of endeavor constituted a conspiracy to defraud an agency of the United States, the Food and Drug Administration, which was charged with regulating the sale of prescription animal and human drugs.[14]

### III.

We turn now to a comparison of the conspiracy offense with which appellant was charged by the indictment and the offense of which he was convicted.

Count I of the indictment plainly charged appellant under the first clause of section 371, which prohibits a conspiracy "to commit any offense against the United States." Rule 8(a), Fed.R.Crim.P., requires that separate offenses be "charged in a separate count for each offense." Thus, Count I must have charged a conspiracy *either* to "commit any offense" *or* to "defraud the United States"; it cannot have charged both. Paragraph 1 identified the conspiracy as one "to commit offenses against the United States, to wit, violations of the ... Act." Subsequent paragraphs referred to "the" or "said" conspiracy, plainly relating back to the single conspiracy identified in the first paragraph. Paragraph 2 of Count I used the "defraud *and mislead*" language of 21 U.S.C. § 333(b), and not the "defraud the United States" language of section 371, which does not contain the term "mislead."

The government urges that paragraph 4 of Count I describes a conspiracy to "defraud the United States" because it contains the following phrase: "to defraud and mislead the FDA, the Texas State Board of Pharmacy, and the Division of Food and Drugs of the Texas Department of Health." We emphasize again that Count I, taken as a whole, could have charged either form of conspiracy described by section 371, but not both, and that "defraud

---

"9. Haga introduced the misbranded drug Equipoise (boldenone undecylenate) into interstate commerce for delivery to Bart Shields ... but he did not do so with the intent to defraud or mislead.

"10. Haga did not conspire ... to introduce, with the intent to defraud or mislead, misbranded drugs into interstate commerce.

"11. Haga did conspire ... to introduce into interstate commerce misbranded drugs." The district court's conclusions of law included the following:

"10. Haga is guilty of the misdemeanor offense of introducing into interstate commerce a drug that is misbranded, a violation of 21 U.S.C. § 331(a), punishable as a misdemeanor pursuant to 21 U.S.C. § 333(a), as charged in Count XVI of the indictment.

"11. Haga is guilty of the misdemeanor offense of introducing into interstate commerce a drug that is misbranded, a violation of 21 U.S.C. § 331(a), punishable as a misdemeanor pursuant to 21 U.S.C. § 333(a), as charged in Count XVII of the indictment.

"12. Haga is guilty of the misdemeanor offense of introducing into interstate commerce a drug that is misbranded, a violation of 21 U.S.C. § 331(a), punishable as a misdemeanor pursuant to 21 U.S.C. § 333(a), as charged in Count XVIII of the indictment."

**14.** The district court's findings of fact relevant to the conspiracy offense included the following:

"2. Haga [and his coconspirators] conspired with each other ... to defraud the Food and Drug Administration ('FDA'), an agency of the United States.

"3. Haga [and his coconspirators] came to a mutual understanding to try to accomplish a common and unlawful plan to defraud the FDA from carrying out its lawful function of administering the Federal Food, Drug, and Cosmetic Act ...

" ...

"6. The foregoing overt acts were knowingly committed in an effort to ... defraud the FDA from carrying out its lawful function...."

The district court's conclusions of law included the following:

"8. Haga is guilty of the felony offense of conspiracy to defraud an agency of the United States, the FDA, from carrying out its lawful function of administering the Federal Food, Drug, and Cosmetic Act, a violation of 18 U.S.C. § 371, punishable as a felony, as charged in Count I of the indictment.

"9. To commit a violation of § 371, it is not necessary that the government shall be subjected to property or pecuniary loss, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane, or the overreaching of those charged with carrying out the governmental intention."

*and mislead"* is the language of section 333(b) rather than of section 371. In addition, paragraph 4 lacks the characteristic language of "conspiracy to defraud" indictments, *see* notes 6 and 7, *supra*, in that it does not describe the manner in which the agencies' functions were obstructed or hindered but, instead, merely states that the conspirators "did ... conceal and cover up their actual activities."

■ The reference to governmental agencies in paragraph 4 reflects the prosecution's original theory of the case, which relied on the premise (the innovative nature of which, even before trial, the government conceded) that anything but an inadvertent distribution of prescription drugs in violation of section 331 should be regarded as a section 333(b) felony offense.[15] We view the government as having advocated below the view that one of appellant's "offenses against the United States" was a *felony* violation of section 333(b); this, in turn, depended upon the theory that distributing prescription drugs in knowing violation of federal *and state* regulatory systems and rules was a felony because the "intent to defraud and mislead" language of section 333(b) included operating a black market prescription drug business in knowing defiance of the law. The inclusion of the two state agencies in paragraph 4 is a further indication of the government's reliance on this theory, because it is plain to us that section 371's conspiracy to defraud provision—"defraud the United States, or any agency thereof"—does not reach a conspiracy to defraud which affects *only* a *state* agency.[16]

■ Regardless of whether appellant could have been convicted under section 371 of a felony conspiracy *to commit offenses* (on the theory that a felony violation of section 333(b) occurred because his conduct defrauded and misled agencies rather than purchasers [17]), appellant was *not* con-

---

15. The original theory of the government's case was described in a memorandum of law it submitted before trial (emphasis added):

"The defendant was operating a black market prescription drug business. The defendant's conduct in concealing his outlaw business is felonious conduct under the Act, and the charges brought by the Government are consistent with the purpose and construction of the Act. *There is no case directly on point on the issue of whether the operation of a black market business constitutes a felony under the Act....* Although the legislative history of the Act does not explain what the felony provision means, we submit that ... [the Act] was enacted to punish those who are involved in illegitimate business.... Because ... the misdemeanor provision of the Act is a strict liability offense, it is sensible that the felony provisions punish illegitimate business activity. Obviously, Congress did not want to treat both the legitimate business operator who violated Section 331 in the mistaken belief that it was operating properly, and the black market operator who deliberately violated the Act and took steps to conceal his activity, in the same way.

"...

"Count I of the Indictment charges that Haga and the other conspirators agreed and conspired to violate the ... Act by dispensing these drugs in violation of the Act with the intent to defraud and mislead. *There is no requirement that anyone be defrauded by the conspirators.* Nor is there any requirement that there be any specific misrepresentation completed to make the charge of conspiracy because the crime is completed when the agreement is made and one overt act is undertaken in furtherance of the conspiracy."

16. In *United States v. Ackal,* 706 F.2d 523 (5th Cir.1983), there is language that might be read as describing a section 371 fraud offense against a state rather than the federal government. *See id.* at 530 ("It may not have been enough if the government had merely shown ... that the *state* received less for its money than it should have.... [The defendants were acting in] a scheme to defraud the *state*.") (emphasis added). Because the facts of *Ackal,* however, involved the administration of federal funds and federal programs by a state agency, we do not read the opinion as recognizing a section 371 offense arising from acts involving only a state agency. *See also United States v. Burgin,* 621 F.2d 1352, 1355–57 (5th Cir.) (discussing and approving a "conspiracy to defraud" prosecution for an offense involving federal funds administered by state agency), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 574, 66 L.Ed.2d 474 (1980); *United States v. Del Toro,* 513 F.2d 656, 663–64 (2d Cir.) (holding that subversion of a federally coordinated program can constitute a conspiracy to defraud the United States, even if no federal officials are participants in the conspiracy and federal fund allocation had not yet occurred when the conspiracy was in effect), *cert. denied,* 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975).

17. Although we do not decide whether the government's original theory of this case is sustainable, we observe that the theory would as a

victed of a conspiracy to commit offenses against the United States. The district court's conclusions of law reflect that appellant "is guilty of the felony offense of conspiracy to defraud an agency of the United States, the FDA" under the "defraud" clause of section 371. The indictment, however, charged him with a different conspiracy offense, and the government's felony conspiracy theory relied upon at trial (and impliedly rejected by the district court[18]) was substantially different from the section 371 "conspiracy to defraud the United States" theory upon which the district court grounded appellant's conviction.

■ The Fifth Amendment requires that a grand jury determine whether an indictment should be handed down. We are unable to conclude with fair certainty that this grand jury determined there were grounds to indict appellant for conspiring to defraud the United States. *See United States v. Outler*, 659 F.2d 1306, 1311 (5th Cir.1981), *cert. denied*, 455 U.S. 950, 102 S.Ct. 1453, 71 L.Ed.2d 665 (1982). The

Sixth Amendment requires that "the accused shall enjoy the right ... to be informed of the nature and cause of the accusation...." The record of proceedings below indicates that neither appellant nor the prosecution contemplated or addressed a theory of criminal culpability under the defraud branch of the conspiracy statute, and that the possibility appellant would be convicted under that arm of section 371 first became evident only when the district judge found appellant guilty of felony conspiracy, while finding he had no intent to defraud under section 333(b).

■ We cannot conclude that the variance between the indictment and the basis of appellant's conviction was the sort of harmless error addressed by Rules 7(c)(3) or 52(a), Fed.R.Crim.P. This is not a case of citing the wrong statute. Rather, the *words* in the *body* of the indictment describing the conspiracy being charged ("conspire to commit offenses against the United States, to wit, violations of the Federal Food, Drug, and Cosmetic Act") plainly allege one offense, while appellant was

---

practical matter have the effect of rendering the "defraud and mislead" language of section 333(b) mere surplusage in the prosecution of any defendant charged with a conscious (and not publicly proclaimed) violation of section 331—only inadvertent (or publicly announced) violations of section 331 would be misdemeanors, because all conscious (and not publicly confessed) violations would necessarily involve a deliberate evasion of established regulatory systems. Nor is it altogether clear that appellant could have been indicted and convicted under the defraud branch of section 371. Although this conspiracy violated federal laws, it is not self-evident that its essence or purpose was an effort to defraud the United States, which, as noted above, the Supreme Court has described as a critical element of the conspiracy to defraud offense under section 371. The conspiracy to defraud offense, as advocated by the government on appeal, would allow, for example, the prosecution of bank robbers on a conspiracy to defraud theory if the robbers, by wearing disguises, impeded the FBI's efforts to identify the culprits, or if they proceeded at night and without prior announcement so as to avoid detection. We think that imparting such infinite elasticity to the second branch of section 371 flies in the face of rules governing the construction of penal statutes.

**18.** We view the district court's rejection of the section 333(b) felony theory argued by the

government at trial as an implied acquittal of charges based on that theory. An implied acquittal bars reprosecution. *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) (holding that jury's failure to address first degree murder charge amounted to a verdict of not guilty on that charge); *see also Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1978) (according same weight to an acquittal by a jury, or in a bench trial, or on appellate review); *Bullard v. Estelle*, 665 F.2d 1347, 1355 nn. 17–18 (5th Cir.1982) (discussing this aspect of *Burks* and indicating same weight applies to implied acquittals), *vacated on other grounds*, 459 U.S. 1139, 103 S.Ct. 776, 74 L.Ed.2d 987 (1983).

We do not reach the question of whether the district court's findings and conclusions can be construed as (or including) an implied finding that appellant is guilty of a misdemeanor conspiracy offense under the "commit any offense" prong of section 371 as a lesser included offense of the conspiracy offense charged by count I of the indictment. Such a conviction would entail, by the terms of 18 U.S.C. § 371 and 21 U.S.C. § 333(a), a fine of at most $1,000 and imprisonment for not more than one year. The government has never contended in this appeal that appellant, in the event his felony conspiracy conviction is reversed, should be subject to a fourth misdemeanor conviction for misdeanor conspiracy (nor was the possibility of such a lesser offense ever suggested below).

convicted of another and different offense (conspiracy to defraud the United States). Moreover, appellant convincingly claims that his defense was substantially prejudiced. Because appellant accepted the indictment and the government's theory of the case as fairly representing the charges against him, he waived his right to a jury trial and conceded the existence of a *misdemeanor* conspiracy, relying on the defense that the absence of any intent to defraud purchasers—which the district court found—barred a felony conviction. The indictment and the government's motions and memoranda below focused appellant's defense on the question of whether knowing noncompliance with applicable laws could be a felony under 21 U.S.C. § 333(b) as conduct that defrauded or misled the FDA and state agencies. Neither the prosecution nor appellant argued the question of whether the second branch of section 371 applied to his conduct. Appellant had offered no defense to this form of conspiracy offense, and only when the district court handed down its verdict based on the conspiracy to defraud theory did appellant discover that those defenses he had raised, although directly responsive to the indictment and the prosecution's theory of the case, were nevertheless irrelevant to the conspiracy offense of which he was convicted.

A conviction for an offense not alleged in the indictment or presented at trial "offends the most basic notions of due process. Few constitutional principles are more firmly established than a defendant's right to be heard on the specific charges of which he is accused." *Dunn v. United States*, 442 U.S. 100, 99 S.Ct. 2190, 2194, 60 L.Ed.2d 743 (1979). Appellant was convicted of an offense for which he was not indicted and which was not asserted during his trial. His conviction on count I must be reversed.[19]

REVERSED as to count I, otherwise AFFIRMED.

---

**19.** The convictions on the misdemeanor lesser included offenses under counts XVI, XVII, and XVIII, which are not challenged, are affirmed. These counts are severed from count I.