UNITED STATES of America, Plaintiff,

v.

BARKER STEEL CO., INC. and
Robert Brack, Defendants.

Crim. No. 91–10125–T.

United States District Court,
D. Massachusetts.

Sept. 23, 1991.

Peter A. Mullin, U.S. Atty., for U.S.

Paul F. Ware, Jr., Goodwin, Procter & Hoar, Boston, Mass., for Barker Steel Co., Inc.

Earle C. Cooley, Cooley, Manion, Moore & Jones, P.C., Boston, Mass., for Robert Brack.

## MEMORANDUM

TAURO, District Judge.

On May 3, 1991, the United States Attorney filed an Information charging defendants Barker Steel Co., Inc. ("Barker") and Robert Brack, President of Barker, with conspiracy to defraud the United States in violation of 18 U.S.C. § 371.[1] Specifically, the government charges defendants with conspiring to frustrate a "lawful governmental function" of various federal agencies.[2] Information at ¶ 12. These agencies were authorized to implement Minority Business Enterprise (MBE) programs, whereby each agency would set aside a certain percentage of federal money for the funding of contracts to certified MBE firms.[3] The government claims that from October 1982 until at least July 1986, defendants used Rusco Steel Company ("Rusco") as an MBE "front company" with respect to federally assisted construction project contracts. *Id.* at ¶ 13. The government charges that, as a result of this scheme, $5 million in federal construction contracts were "improperly credited towards the MBE goals of the various departments and agencies of the United States."[4] *Id.* at ¶ 14.

On August, 2, 1991, defendants moved, under Fed.R.Crim.P. 12(b)(2)[5], to dismiss the action against them on the grounds that they had had no fair warning that their conduct was illegal. In support of this claim, they point out that the MBE program statutes contain no criminal provi-

1. 18 U.S.C. § 371 provides in pertinent part: If two or more persons conspire ... to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be [guilty of a criminal offense].

2. The agencies involved are the United States Department of Transportation, the Environmental Protection Agency and the General Services Administration.

3. Various agency regulations set forth the criteria for qualification as an MBE. *See, e.g.,* 49 C.F.R. § 23.53. These regulations generally require that the firm be owned and controlled by specified minorities.

4. The Information did not charge that the government suffered any property or pecuniary loss.

5. Fed.R.Crim.P. 12(b)(2) provides that a defendant may seek to dismiss the action against him if "defects in the indictment or information" exist.

sions, and impose no duties on them. They also point out that, at all relevant times, Rusco was an MBE.

The government counters that 18 U.S.C. § 371, standing on its own, gave fair warning to the defendants that their conduct was illegal.

## I

### Background

Barker furnishes fabricated steel reinforcing bars and other products to the construction industry throughout New England. The Information alleges that Barker agreed with Rusco that Barker would finance a new division at Rusco which would engage in the steel reinforcing bar erection business. *Id.* at ¶ 16. In return, Rusco agreed to allow Barker to market steel products through Rusco. *Id.* According to the Information, Barker sales personnel solicited orders from general contractors. *Id.* at ¶ 18. When a general contractor requested MBE status on an order, Barker arranged for the contract to be in the name of Rusco. *Id.* at ¶ 19. Barker prepared two sets of invoices with regard to these sales. The first showed a sale from Barker to Rusco. The second showed a sale, at exactly the same price, from Rusco to the general contractor. The general contractor, in turn, claimed credit for these sales towards its MBE goals. *Id.* at ¶ 20.

The Information also alleges that defendants exercised substantial control over the operation of Rusco, including financial management, maintenance of Rusco's books and records on Barker's computer system, hiring and firing of key employees and operation of accounts receivable. *Id.* at ¶ 22. In addition, Barker financed the operations of Rusco's erection division through unsecured cash advances and the provision of goods and services. *Id.* at ¶ 23.

## II

### Defendants' Motion to Dismiss

A defendant must violate some duty to the government in order to be culpable under § 371. To convict, the government needs to prove that "the conspirators' actions violated a duty reasonably owed to the government." *United States v. Tuohey,* 867 F.2d 534, 538 (9th Cir.1989).

Here, the defendants' argument is that they did not violate any duty reasonably owed by them to the government. To support their motion, they rely on *United States v. Anzalone,* 766 F.2d 676 (1st Cir. 1985). In that case, the defendant "structured" bank transactions by separating funds into several small deposits, in order to avoid having the bank report those deposits under the Currency and Foreign Transactions Reporting Act. The government charged him with violations of 18 U.S.C. § 1001 (proscribing schemes to conceal material facts from the federal government), 18 U.S.C. § 2 (proscribing aiding, abetting or causing a crime by another) and 31 U.S.C. §§ 5313, 5312 (imposing penalties for failure to file reports under the Reporting Act). Reversing defendant's conviction, the court held that the currency reporting regulations were directed to banks, and did not provide fair warning to defendant that his conduct might subject him to criminal sanctions.

While *Anzalone* did not involve § 371, defendants argue that its reasoning should apply here. This court agrees. In both *Anzalone* and the present case, defendants allegedly engaged in dishonest conduct. Defendant in *Anzalone* allegedly attempted to avoid having authorities know of his large bank deposits. Defendants here allegedly caused Rusco, an MBE, to be improperly credited as an MBE firm on the subject contracts. But in both *Anzalone* and the instant case, the underlying statutes and regulations imposed a duty on those with whom defendants dealt, and not the defendants themselves. The court's admonition in *Anzalone* is instructive,

> If the government wishes to impose a duty on customers, or "other participants in the transaction," to report "structured" transactions, let it require so in plain language. It should not attempt to impose such a duty by implication, expecting that the courts will stretch statu-

tory construction past the breaking point to accommodate the government's interpretation. *Id.* at 682. *See also United States v. Murphy,* 809 F.2d 1427, 1432 (9th Cir.1987) (In affirming a dismissal under § 371, the court stated "[t]he intent here may, indeed, have been evil, but the conduct had not yet been denounced as crime."); *United States v. Porter,* 591 F.2d 1048, 1055 (5th Cir. 1979) (reversing convictions under § 371 because the government suffered no monetary loss, no regulations proscribed defendants' conduct and defendants filed no materially false statements).

Canons of statutory construction also support the position of defendants here. Courts must strictly interpret "criminal statutes and rules in favor of defendants where substantive rights are involved." *Smith v. United States,* 360 U.S. 1, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959). In *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), the Supreme Court warned that the court must review indictments under § 371 narrowly "because of the possibility, inherent in a criminal conspiracy charge, that its wide net may ensnare the innocent as well as the culpable." *Id.* at 860, 86 S.Ct. at 1844. Conduct can be prosecuted under § 371 only if "the defendant's conduct 'plainly and unmistakably' falls within the proscription" of the statute. *United States v. Porter,* 591 F.2d 1048, 1055 (5th Cir.1979) (*quoting United States v. Gradwell,* 243 U.S. 476, 485, 37 S.Ct. 407, 410–11, 61 L.Ed. 857 (1917)). If doubt exists "as to whether a defendant's conduct is embraced in the prohibition, the policy of lenity requires that the doubt be resolved in favor of the accused." *Porter,* 591 F.2d at 1053 (5th Cir.1979) (*quoting Ladner v. United States,* 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958)).

Here, the government has alleged no violation by the defendants of any MBE program statute, nor has it clearly stated what duty defendants violated that was owed by them to the federal government. The government's case essentially charges defendants with frustrating a lawful governmental function, because federally assisted construction contracts were improperly credited toward the MBE goals of various governmental agencies. Yet the government concedes that the subject contracts went to Rusco, an MBE.

The government's reliance on *United States v. Anderson,* 579 F.2d 455 (8th Cir. 1978), *cert. denied,* 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978) is misplaced. There, defendants were convicted of defrauding the United States with regard to a federal highway project. Defendant Leslie Anderson, general financial officer for Sharp County, Arkansas, awarded a portion of a federal contract to his son, James Anderson. Leslie Anderson authorized county workers paid under the Comprehensive Employment and Training Act of 1973 (CETA), 29 U.S.C. § 801 *et seq.,* to perform some of the work which his son, as a private contractor, was obligated to fulfill. In effect, the federal government paid James Anderson's labor costs, when he obtained his labor for free through CETA. Defendants argued that since no regulation prohibited the use of CETA employees on county projects receiving other types of federal funding, and since the federal government paid no more than it had originally intended to pay, defendants did not defraud the United States. The court rejected this argument, stating

> Even though the Federal Highway Administration spent no more than originally contemplated according to estimates contained in the contract, the defendants' actions nonetheless interfered with the government's interest in 'seeing that the entire project [was] administered honestly and efficiently and without corruption and waste.'

*Id.* at 459 (*quoting United States v. Hay,* 527 F.2d 990, 998 (10th Cir.1975), *cert. denied,* 425 U.S. 935, 96 S.Ct. 1666, 48 L.Ed.2d 176 (1976)).

*Anderson* is distinguishable from the case at hand. In *Anderson,* one of the defendants was the county financial officer seeking federal funds for local highway projects. He was, therefore, in a position of trust with the federal government, and had a duty to live up to that trust. In addition, his co-defendant fraudulently ob-

tained public funds when he effectively received double payment from the government for the work he performed. The defendants here, on the other hand, did not obtain or divert public funds by false representations, nor did they abuse a position of trust. Even if, as the Information implies, defendants' support made it possible for Rusco, an MBE, to be improperly credited on certain contracts, there was no violation by the defendants of any duty owed by them to the government. The crediting and reporting of MBE set asides is a duty imposed upon the general contractors, not the defendants.

The government, nonetheless, argues that it is sufficient that defendants impaired a lawful governmental function, and here the government has asserted that $5 million in federal funds "were improperly credited towards the MBE goals" of various agencies of the United States. Information at ¶ 14. But, the government must show "more than inadvertent contact with a governmental agency or incidental infringement of governmental regulations...." *United States v. Haga*, 821 F.2d 1036, 1041 (5th Cir.1987). Rather, there must be clear interference and active contact with governmental agency functions. *See id.* at 1040 & n. 6. The Information fails to allege any direct contact between defendants and a federal agency. The government's charge that general contractors improperly credited MBE set asides to Rusco is not enough to implicate the defendants in a fraud against the United States.

### Conclusion

In order for defendants to have violated § 371, they must have breached an identifiable duty owed by them to the government. While others involved in this transaction may have violated a specific statutory duty to the government, the defendants did not. The Information against them, therefore, must be dismissed.